411 Mass. 570 (1992)
853 N.E.2d 840
A.R.
vs.
C.R. & another.[1]
Supreme Judicial Court of Massachusetts, Hampden.
October 9, 1991.
January 9, 1992.
Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.
Beth D. Levi, Assistant Attorney General, for the intervener.
Scott J. Charney for the plaintiff.
David Santos, for the defendant, was present but did not argue.
WILKINS, J.
The plaintiff A.R., whom we shall call the husband, seeks a declaratory judgment that he is not the father of either of two girls who were born to the defendant C.R., whom we shall call the wife. The Department of Revenue was permitted to intervene as a defendant on behalf of the Department of Public Welfare and C.R.[2]
On September 26, 1990, a judge of the Probate and Family Court allowed the husband's motion for blood tests "to determine whether [the husband] is the father" of the two girls. On that same day, the judge denied the defendant intervener's motion to dismiss the complaint. That motion was based on two grounds: (1) the husband has an adequate remedy in his pending divorce action against the wife and (2) the husband is estopped to deny his paternity "because he has acknowledged the children as his own and holds himself out as their father, thereby inducing the children's detrimental reliance on that assertion." A single justice of the Appeals *572 Court granted the intervener and C.R. leave to appeal from the allowance of the motion for blood tests and from the denial of the intervener's motion to dismiss the appeal. We granted the defendants' application for direct appellate review.[3]
The factual record is thin. The only facts that the motion judge could consider in deciding the motion for blood tests were (a) those in an affidavit of the husband which is incorporated in the complaint and (b) those facts admitted in the pleadings in the pending divorce action between the husband and the wife. The motion to dismiss had to be considered on the assumption that the facts well-pleaded in the husband's complaint were true. Manning v. Zuckerman, 388 Mass. 8, 9 (1983). Unattested facts stated in pleadings filed on behalf of the wife and the intervener have no standing in these circumstances. The defendants submitted no affidavit contradicting any aspect of the husband's affidavit or presenting additional facts.
We summarize the facts. The first girl was born on September 27, 1987. The husband and wife were not then married, and it is not apparent that they were then living together. The wife told the husband that she was two months pregnant with the first child one month after she and the husband had sexual intercourse for the first time. The husband did not want the girl to be considered illegitimate and permitted his name to be listed as the girl's father on her birth certificate. The husband and wife were married on March 12, 1988. The wife "was having relations with other men within a few weeks of [the] marriage. Relations between [the husband and wife] had virtually ceased by the time [the *573 second daughter] was conceived. [The husband] was on the road constantly." The second daughter was born on April 20, 1989.
1. In the circumstances, the judge was correct in declining to rule that the question of the husband's paternity should be decided in the pending divorce action. A different judge had ruled in the divorce action, on his own and without explanation, that the paternity question, although raised by the pleadings, had to be presented in a separate "equity" proceeding. No party in the divorce action favored that conclusion, and no authority supports that result. There is nothing to justify the judge's action in what is said in C.C. v. A.B., 406 Mass. 679 (1990), which involved a paternity claim by one not a party to the marriage. There is, moreover, no logical reason to require that a separate action be brought to determine a husband's paternity when the issue is presented in a divorce action. Indeed, a paternity finding in a divorce judgment "constitutes an adjudication of the paternity of a child of the marriage." See Anderson v. Anderson, 407 Mass. 251, 256 (1990).
Neither party sought an interlocutory appeal of the first judge's ruling. The husband followed the directions of the first judge and commenced this declaratory judgment action. The first judge's ruling, even if erroneous, justifies the decision to consider the paternity question in this action. In the future, however, any paternity question between the parties in a divorce action should be dealt with in that proceeding.
2. The motion judge properly denied the defendants' claim that the husband is equitably estopped to deny that he is the father of the children.[4] The defendants argue that the children have relied to their detriment on representations of the husband. They make no claim, however, that the wife has relied to her detriment on any representation of the husband.[5]
*574 We have not previously been asked to decide whether, because of detrimental reliance on his representations of paternity, a man who may not be the natural father of his wife's child may properly be estopped to deny his paternity, or at least to deny his obligation to support the child during the child's minority. Several courts have recognized that, in general, a man may be estopped to deny his support obligation but have held that on the particular facts there was no estoppel.[6] A few courts have concluded that on the special facts before the court the man was estopped to deny a duty of support.[7]
Because the first child was only two and one-half years old when the divorce action was commenced and the second child was less than one year old, it is doubtful that either child relied in any meaningful sense on any representation of *575 paternity that the husband may have made. We need not decide whether emotional detriment, caused by reliance on representations of the husband, alone would be sufficient to uphold a claim of equitable estoppel, without any showing of economic detriment. Compare the opinion of the court and the dissent of Chief Justice Murphy in Knill v. Knill, 306 Md. 527 (1986). There is no basis on this record for concluding, as a matter of law, that either child detrimentally relied in any way on any representation that the husband made. For that reason alone, the denial of the motion to dismiss this action, sought on the basis of equitable estoppel, was proper.
We would proceed with caution, as other courts have, in imposing a duty of support on a person who has not adopted a child, is not the child's natural parent, but has undertaken voluntarily to support the child and to act as a parent. See Knill v. Knill, supra at 538-539; Marriage of A.J.N. & J.M.N., 141 Wis.2d 99, 106 (1987). In most instances, such conduct should be encouraged as a matter of public policy. The obligation to support a child primarily rests with the natural parents, and one who undertakes that task without any duty to do so generally should not be punished if he or she should abandon it. On the other hand, a husband who for years acts as a father to a child born to the wife, supports that child, and holds himself out as the father to the child and to the world, may be obliged to continue to support the child when he, for the first time, renounces his apparent paternity in an attempt to avoid court-imposed support obligations.[8] It may be relevant, in deciding whether reliance was detrimental, to know whether there once was an opportunity to pursue the natural father that is now lost. See Miller v. Miller, 97 N.J. 154, 168-169 (1984).
It may be that, as a matter of public policy, an affirmative duty to support, perhaps based on an express or implied promise, should be recognized on the particular facts of a *576 case, and that such a duty should not be established indirectly by an equitable estoppel. We shall have to develop the appropriate principles on the specific facts in future cases, including perhaps this case on a fuller record.
3. We come then to the defendants' challenge to the order that blood tests be conducted. For most people, such tests involve virtually no risk, trauma, or pain. See Schmerber v. California, 384 U.S. 757, 771 (1966). There is no doubt that blood test results would be relevant on the issue whether the husband is the natural father of the two girls. The question is whether the record presents an adequate basis for entering orders for blood testing as to each child. We would not permit such an intrusion solely on the basis of the husband's assertion, unsupported by facts, that he is not the father of the girls.
The husband states that the test is whether on the record there is probable cause to believe, determined child by child, that he is not the child's father. Certainly, the existence of probable cause to believe that a man is not the father of a child would justify an order for blood tests. In such circumstances, the prohibition of the Fourth Amendment to the United States Constitution against unreasonable searches and seizures, applicable to the States through the Fourteenth Amendment, would not be violated. Schmerber v. California, supra at 769-770. Commonwealth v. Beausoleil, 397 Mass. 206, 223 (1986). No argument is made that the requirements of art. 14 of the Massachusetts Declaration of Rights would be any stricter than those of the Fourth Amendment. We make no distinction for constitutional purposes between blood testing sought to disprove paternity and blood testing sought to establish paternity. See S.A. v. M.A., 531 A.2d 1246, 1252 (D.C. 1987).
We, therefore, accept probable cause as the proper test for the purpose of deciding this case.[9] The defendants argue that *577 all the husband has presented is "a mere belief or suspicion." We disagree.
We turn to the uncontroverted facts presented in the husband's affidavit. We must accept the allegations in the husband's uncontroverted affidavit as true for the purposes of the motion for blood testing. Farley v. Sprague, 374 Mass. 419, 424-425 (1978). The uncontradicted facts alleged as to the first girl show probable cause to believe that the husband is not her father. In fact, if true, the stated facts show conclusively that he could not be the first girl's father. Those facts are that the wife was already pregnant with the first girl when the husband and wife first had sexual intercourse. The judge was warranted in concluding that there was probable cause justifying an order for blood testing concerning the paternity of the first child.
The facts relating to the second girl are not as compelling for a finding of probable cause. She was born about thirteen months after the husband and wife were married. According to the husband's uncontroverted affidavit, whose facts we must accept as true for present purposes, the wife had relations with other men within weeks of the marriage, and relations between the husband and wife "had virtually ceased" by the time the second child was conceived. Those facts do not eliminate all possibility that the husband is the father of the second girl. They do, however, raise a factual basis for the husband's claim that he is not the child's father. The judge would have been warranted in his discretion in requiring a fuller statement from the husband before acting on the *578 motion, but he was not required to do so. The wife has not denied that she had sexual relations with other men within weeks of the marriage, nor has she denied the husband's claim that he had "virtually" no sexual relations with her around the time the child was conceived. That is enough to provide probable cause to believe, but not conclusive proof, that the husband is not the father of the second girl.
The orders denying the intervener defendant's motion to dismiss the complaint and directing that blood tests be conducted are affirmed.
So ordered.
NOTES
[1] The Department of Revenue, intervener, represents the wife only to the extent that it is subrogated to claims for support against the husband.
[2] See G.L.c. 18, § 21 (1990 ed.), and G.L.c. 119A, § 3 (1990 ed.), setting forth the subrogation rights of the Department of Public Welfare and the manner of their enforcement by the Department of Revenue.
[3] Each notice of appeal, entered following the order of the single justice of the Appeals Court, claims an appeal only from the allowance of the husband's motion for blood testing. No notice of an interlocutory appeal from the denial of the motion to dismiss was filed, although the right to take such an appeal was sought and authorized. The husband makes no point of this, and the parties have argued the propriety of the denial of the motion to dismiss. We shall, therefore, consider the question of the dismissal of the complaint but, of course, only on the grounds asserted in that motion.
[4] The motion to dismiss erroneously alleges that the children were born during the marriage. Only one was.
[5] Some courts recognize that a husband may be equitably estopped to deny paternity where the natural mother has relied to her detriment on the husband's representation of his intent to support. See Remkiewicz v. Remkiewicz, 180 Conn. 114, 119-120 (1980) (neither State nor mother changed position in reliance on husband's affidavit of parenthood); Albert v. Albert, 415 So. 2d 818, 820 (Fla. Dist. Ct. App. 1982); Marriage of A.J.N. & J.M.N., 141 Wis.2d 99, 105-106 (1987).
[6] See, e.g., Clevenger v. Clevenger, 189 Cal. App.2d 658 (1961); Fuller v. Fuller, 247 A.2d 767, 769 (D.C. 1968) (no misrepresentation to child and no prejudice shown); Knill v. Knill, 306 Md. 527, 537 (1986) (4-3 decision) (child incurred no financial detriment as a result of husband's conduct over twelve years); Berrisford v. Berrisford, 322 N.W.2d 742, 745 (Minn. 1982) (child too young to have relied on any representation inferable from husband's conduct); Wiese v. Wiese, 699 P.2d 700, 703 (Utah 1985) (equitable estoppel does not lie until it is shown that efforts to gain support from biological father failed); NPA v. WBA, 8 Va. App. 246, 253-254 (1989) (no knowing misrepresentation to child; no detriment; claim against natural father for child support not lost).

In Clevenger v. Clevenger, supra, the court said in dicta that if the facts show "that the husband represented to the boy that he was his father, that the husband intended that his representation be accepted and acted upon by the child, that the child relied upon the representation and treated the husband as his father and gave his love and affection to him, that the child was ignorant of the true facts, we would have the foundation of the elements of estoppel." Id. at 671. There, however, the record did not show that the husband represented himself to the child as his natural father. Id. at 670.
[7] See Marriage of Valle, 53 Cal. App.3d 837, 841-842 (1975); Nygard v. Nygard, 156 Mich. App. 94, 99 (1986); Commonwealth ex rel. Gonzalez v. Andreas, 245 Pa. Super. 307, 312 (1976).
[8] Although we have expressed this possibility in terms of the obligation of a husband, the form in which the issue of support would more commonly arise today, we do not suggest that a woman would not be obliged to support a child in somewhat similar circumstances.
[9] It may be that, for Fourth Amendment purposes, something less than probable cause would suffice to justify court-ordered blood testing in civil proceedings such as this. In S.A. v. M.A., supra at 1253, the court seems to accept a "reasonable under the circumstances" test. The Supreme Court of New Jersey recently has indicated that an order to test a putative father could be supported by "an articulable suspicion that the defendant is the father." S.S. v. E.S., 124 N.J. 391, 394 (1991). The court accepted the reasoning of the Appellate Division that rejected probable cause as the standard, relying on recent opinions of the Supreme Court of the United States that have applied a balancing test. S.S. v. E.S., 243 N.J. Super. 1, 11 (1990).

Massachusetts R. Dom. Rel. P. 35 (a), (identical to Mass. R. Civ. P. 35 (a), 365 Mass. 793 [1974]), requires that an order for blood group testing may be entered "only on motion for good cause shown." Any showing of "good cause" would have to meet any applicable constitutional standard.