KAREN E. LIEBSON *vs.* LAURENCE S. LIEBSON.

Essex. January 8, 1992. - April 10, 1992.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ

*Jurisdiction*, Equitable. *Divorce and Separation*, Division of property. *Estoppel*. *Minor*, Custody.

A plaintiff seeking to impose a constructive trust on all property acquired or owned by her husband or by her husband and herself jointly during the period of their cohabitation before marriage was not entitled to such equitable relief where she had an adequate remedy at law in Probate Court in the parties' pending divorce action. [433]

The equitable doctrine of estoppel was not applicable to establish an affirmative duty on the part of a husband to contribute to the support of his wife's niece, who lived with the parties until their separation and with the wife thereafter. [433-434]

CIVIL ACTION commenced in the Essex Division of the Probate and Family Court Department on January 26, 1990.

The case was heard by *Eileen M. Shaevel*, J., on a motion to dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Henry P. Sorett* for Karen E. Liebson.

*William M. Levine* (*David H. Lee* with him) for Laurence S. Liebson.

LYNCH, J. The plaintiff, Karen E. Liebson, filed a complaint for divorce from the defendant, Laurence S. Liebson, in February, 1989.[1] While cross actions for divorce were pending in the Probate and Family Court in Essex County, she filed a complaint for equitable relief in January, 1990, seeking an interest in certain of the defendant's property, and

_____

[1]The divorce matter is not before us.

an order that he be required to contribute to the support of her niece. After a hearing, the defendant's motion to dismiss the complaint was granted without opinion. The plaintiff appealed, and we transferred the case here on our own motion. We affirm.

The following allegations form the basis of the plaintiff's complaint. The parties met in early 1982, and lived together from April, 1982, until September 21, 1985, when they were married in Las Vegas, Nevada; they separated in December, 1988.[2] In 1985, the parties went to Florida and visited the plaintiff's brother, his girl friend, and their four children, living in deplorable conditions. In 1987, the Florida Department of Human Resources contacted the plaintiff and requested that she take two of the children on a temporary basis. In early 1988, the parties took into their home two of the four children, the elder of whom returned to Florida shortly thereafter. The younger child has remained in Massachusetts, living with the parties until their separation, and with the plaintiff since then. At some point, the parties obtained physical custody of the child by Florida court order, although legal custody remained in her father.[3] The parties agreed that they would adopt the child, and each voluntarily assumed parental responsibilities toward the child.[4]

Before the parties began living together, the plaintiff was gainfully employed, was actively pursuing a career in sales, was self-supporting, and owned the house in which she resided. The plaintiff alleges that she halted her career, at the defendant's request, in order to act as the defendant's living companion, travelling companion, and homemaker. In count one the plaintiff seeks a constructive trust on all property ac-

---

[2]The defendant alleges in his answer that they were also separated from January, 1987, until sometime in the summer of 1987, and again during the summer of 1988 and into September, 1988.

[3]The mother was abusive to the child, and her parental rights were severely curtailed.

[4]The defendant, in his answer, denies any assumption of parental responsibility toward the child and states that he did not give any definitive answer to the question of adopting her.

quired or owned by the defendant, or by the parties jointly, during the period of their cohabitation.

In count two the plaintiff seeks support from the defendant on her behalf and on behalf of her niece, so long as the plaintiff shall have physical custody of the child.

*Count One.* The plaintiff argues that the Probate Court has jurisdiction in equity over count one of the complaint because the plaintiff cannot obtain an adequate remedy at law. She argues that the Probate Court might exclude from its consideration of her divorce circumstances prior to the marriage. The defendant asserts that the plaintiff has an adequate remedy at law because the Probate Court is fully empowered to grant all the relief to which the plaintiff may be entitled in the context of the divorce. We agree.

We have held that the Probate Court has discretion under G. L. c. 208, § 34 (1990 ed.),[5] to assign to one spouse property of the other spouse whenever and however acquired. *Rice* v. *Rice,* 372 Mass. 398, 400 (1977). The plaintiff, having an adequate remedy at law, has no basis for count one of her equity complaint.

*Count Two.* Insofar as the plaintiff seeks support for herself, that issue will be resolved in her divorce proceeding. The purpose of alimony is to provide economic support to a dependent spouse. *Heacock* v. *Heacock,* 402 Mass. 21, 24 (1988).

Insofar as the plaintiff seeks support for her niece, the complaint fails to state a claim on which relief may be granted. The plaintiff argues that she has stated a claim for equitable estoppel; that the defendant placed himself in the position of father and that she and the child both relied on

---

[5]General Laws c. 208, § 34 (1990 ed.), provides in pertinent part: "Upon divorce . . . the court . . . may make a judgment for either of the parties to pay alimony to the other. In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife *all or any part of the estate of the other* . . .. In fixing the nature and value of the property to be so assigned, the court . . . *may also consider the contribution* of each of the parties in the acquisition, *preservation or appreciation in value* of their respective estates and the contribution of each of the parties as a homemaker to the family unit" (emphasis added).

him to their detriment. We have recently disclosed that we adopt a cautious approach toward imposing an affirmative duty to support by equitable estoppel. *A.R.* v. *C.R.*, 411 Mass. 570, 575-576 (1992).[6] There, we stated that "[t]he obligation to support a child primarily rests with the natural parents, and one who undertakes that task without any duty to do so generally should not be punished if he or she should abandon it. . . . It may be that, as a matter of public policy, an affirmative duty to support, perhaps based on an express or implied promise, should be recognized on the particular facts of a case, and that such a duty should not be established indirectly by an equitable estoppel." *Id.*

This is not such a case. The legal custody of the child remains with her biological father; no Massachusetts statute exists imposing an obligation of support on one who is not the natural parent of a child. The fact that physical custody may have been granted to the parties does not create a legal obligation on the defendant to provide support. He lived with the child for, at most, eleven months. The defendant is under no legal obligation to support a child of another merely by virtue of the circumstances alleged here.[7]

*Judgment affirmed.*

---

[6]*A.R.* v. *C.R.*, 411 Mass. 570, 574-575 (1992), discussed estoppel in other States. Where such estoppel was said to arise in these other jurisdictions, it was in circumstances that do not exist here.

[7]*A.S.* v. *B.S.*, 139 N.J. Super. 366, 371-372 (1976), aff'd, 150 N.J. Super. 122 (1977), cited by the plaintiff as a case where the parties who were not the natural or adoptive parents of the child were ordered to support the child is distinguishable. It involved a long-term relationship (at least nine years). The parties had taken the child into their home shortly after his birth; from that time, the child bore their surname. The parties were the sole source of support for the child. The child's natural parents neither supported the child nor communicated with him from the time he was approximately eight months old when they purported to grant exclusive custody, power of attorney, and guardianship to the parties with respect to the child.