**In re the ESTATE OF Malaina Hope AYERS, a Minor.**

**Malaina Hope Ayers, Petitioner–Appellant,**

v.

**Shelby Tracy, Brenda Tracy, and Western Surety Company, Respondents–Respondents.**

No. 22018.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 23, 1998.

Motion for Rehearing or Transfer Denied Jan. 14, 1999.

Application for Transfer Denied Feb. 23, 1999.

Kendall R. McPhail and Thomas M. Benson, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for appellant.

Matthew F. Trokey, Cantwell, Smith & Trokey, L.L.P., Branson, and Gary E. Bishop, Mann, Walter, Weathers, Walter & Bishop, L.C., Springfield, for respondents.

PHILLIP R. GARRISON, Chief Judge.

Malaina Hope Ayers ("Petitioner") filed suit against the former conservators of her estate, Shelby Tracy and Brenda Tracy (collectively referred to as the "Tracys"), and Western Surety Company ("Western"), their bonding company. Petitioner claimed that the Tracys and Western were liable to her for funds which had previously been in her conservatorship estate, but which were not delivered to her when she reached the age of majority. In a case that epitomizes the difficult decisions that trial courts are often called upon to make and illustrates the fact that in some cases there is no totally good or desirable solution, the trial court denied relief to Petitioner. We affirm.

The Tracys were approached by a Stone County, Missouri Associate Circuit Judge and asked if they would consider becoming foster parents to three teenage siblings, one of which was Petitioner. After agreeing to do so, the Tracys were appointed as guardians and conservators of the children in January 1990, and Western issued its conservators' bond in the amount of $25,000. To make space for the two boys and Petitioner in their two-bedroom home, the Tracys arranged an area in their basement for themselves.

Contrary to their hopes, the Tracys were unable to develop a "family" relationship with the siblings, who decided they wanted to live elsewhere. The children were then placed in other homes, and in September 1990, the Tracys' resignations as guardians of the children were accepted. The court asked them to continue to serve as conservators, however, until successors could be found. In May 1991, Dawn Pride, Petitioner's half-sister, filed a petition to be appointed as Petitioner's successor conservator. That petition was heard by the court on June 27, 1991.

On the day of the hearing, the Tracys filed several documents including a "Final Settlement" for the conservatorship estate of both Petitioner and her brother, John Ayers.[1] They also filed their resignations as conservators of Petitioner's estate. The court approved the final settlement, accepted the Tracys' resignations, and revoked the letters of conservatorship issued to them. The court then granted Dawn Pride's petition to be appointed successor conservator for Petitioner, and ordered that she was "to serve upon posting a bond with a corporate surety in the sum of $30,000 subject to the Court's approval." The court also ordered that "[u]pon the filing and approval of the surety bond the clerk shall issue letters...." No written order discharging the Tracys as conservators of Petitioner's estate, or Western as surety, was entered.

From the final settlement, it appears that $27,767.13 remained in Petitioner's estate. According to the testimony, on the day the Tracys' resignations were accepted and their letters were revoked, there were off-the-record discussions involving the court and the attorneys to the effect that the Tracys should go to the bank and transfer the remaining funds to the successor conservator. The attorney who was acting as Petitioner's guardian ad litem testified that the court indicated to the Tracys that the only thing left for them to do was to transfer the remaining funds to the successor conservator. Furthermore, the guardian ad litem testified that he actually called the bank to be sure someone would be there late that afternoon when the Tracys arrived to conclude the transfer. Mrs. Tracy testified that the judge told them to go to the bank and transfer the funds. Mr. Tracy testified that the decision to transfer the funds that day was reached in a conference in the judge's office by everyone involved, including the attorneys and the judge. After leaving court that day, Mrs. Tracy went to the bank and transferred the remaining funds to Dawn Pride.

Dawn Pride, however, never filed a bond in Petitioner's estate and no letters of conservatorship were ever issued to her. Correspondingly, there was never an order entered discharging the Tracys as conservators or Western as surety. By the time Petitioner reached eighteen years of age, the money transferred had been spent by Dawn Pride

1. By that time, both of the male siblings had become eighteen years of age. The conservatorship estate was still open, however, not only for Petitioner, but also for the other male sibling, John Ayers, who became eighteen on June 2, 1991.

without court authorization, and no funds remained for distribution to Petitioner.

In her suit, Petitioner alleged that the Tracys transferred the funds in her conservatorship estate to Dawn Pride even though she had not been appointed as conservator, and they, as the last duly appointed conservators, failed to deliver the balance of the estate funds to her. She also alleged that Western was responsible for the money owed because of its surety bond.

Petitioner's theory can be condensed by referring to the findings of the trial court where it stated:

> In support of her claim, Petitioner suggests to the Court that since Dawn Pride never posted a surety bond and was never issued letters of conservatorship, [the Tracys] improperly transferred Petitioner's funds to Dawn Pride in violation of Section 475.130, RSMo. Petitioner also suggests that since the Tracys were never discharged by the Stone County Probate Court, their statutory duty to "protect, preserve and manage the estate" continued until Petitioner attained the age of 18 years, and [the Tracys] therefore remain strictly liable for the subsequent misuse and misappropriation of conservatorship funds by [Dawn Pride]. Petitioner also suggests that since [Western] was never discharged and its conservatorship bond to [the Tracys] never released, [Western] remains liable to Petitioner on that bond.

■ In this court-tried case, the standard of our review is that established in Rule 73.01(c) as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Under this standard, considerable deference is accorded judgments turning on evidentiary and factual evaluations by the trial court. *In re Marriage of Fry*, 827 S.W.2d 772, 773 (Mo.App. S.D.1992). We accept all evidence and inferences favorable to the judgment and disregard all contrary inferences. *Kueffer v. Brown*, 879 S.W.2d 658, 660 (Mo.App. E.D.1994).

■ In her first point relied on, Petitioner contends that the trial court erred because it based its judgment on the transcript of the earlier proceedings in the probate division of the circuit court held on June 27, 1991, but that this transcript was not offered or admitted into evidence at trial, and allegedly was not available to the parties prior to or during trial. A copy of the transcript of the probate proceeding is included in the record on appeal in this case. In that transcript, the judge made the following statement:

> Then the Court will and has on this date executed the approval of the final settlement filed on this date. Acknowledges the receipt and *has executed the order of discharge, discharging Shelby and Brenda Tracy as co-conservators for the estates of [Petitioner's brother] and [Petitioner].* Accepted their resignations and has issued the order accepting their resignation[s] as conservator of the estate of [Petitioner]. (Emphasis ours).

Petitioner argues that the italicized statement was incorrect because the Tracys were never discharged as her conservator.

The parties appear to agree that an effort was made to obtain a transcript of the June 27, 1991 proceedings prior to the commencement of this trial. Apparently the attorneys for the Tracys and Western requested that the court clerk locate the electronic record of the June 27 proceedings, but were told that it had been lost or destroyed.

■ The record reflects that the trial court announced, prior to trial, that it was going to take judicial notice of the contents of its file including "all of the records, not only the Court's orders, but the orders entered by prior judges." The judge also announced that he had a full copy of the "estate file" which he brought "not only for the Court's use, but also for the use of counsel." The record here does not reflect whether or not the transcript in question was then in the court file. Courts may take judicial notice of their own records. *Bray v. Bray*, 629 S.W.2d 658, 660 (Mo.App. E.D.1982). In its judgment, the trial court recited that it had considered not only the court files, pleadings,

and evidence adduced, but also "the tape recording of the June 27, 1991 hearing."

Introduced at trial was a copy of a signed "Order Accepting Resignation Of Conservators Of The Person Of The Minor Estate Of [Petitioner]," by which the court accepted the Tracys' resignations as co-conservators for Petitioner, and revoked their letters of conservatorship. No written order discharging them from that capacity, however, is contained in the legal file presented with this appeal, and none was apparently entered. In fact, the trial court found:

> It is clear from court records and all parties agree that after the hearing on June 27, 1991, no surety bond was ever posted by Dawn Ayers Pride and no letters of guardianship or conservatorship were ever issued to her by the Stone County Probate Court. *It is also clear that [the Tracys] were never discharged as conservators and [Western ] was never discharged as surety in the conservatorship estate established for Petitioner.* (Emphasis ours).

■ In support of her point, Petitioner contends that she was unduly prejudiced because the contents of the transcript of the June 27, 1991 proceedings went to the issue of whether the Tracys were actually discharged as co-conservators. Petitioner notes the inconsistency between what the judge said at the June 27 hearing about the Tracys being discharged, and the fact that no such order was entered. She argues that had she known that the trial court would consider the June 27 transcript she could have subpoenaed the judge who held that hearing and established that no such order of discharge was entered. This argument is rendered moot by the fact that the trial court specifically found that no such order had been entered, and proceeded to decide the issues based on the fact that there was no showing that the Tracys breached their duty as conservators. It is clear, therefore, that the trial court did not decide any issue on the mistaken belief that the Tracys had, in fact, been discharged as conservators of Petitioner's estate. Evidence before the trial court in a court-tried case will not be found to be prejudicial and a ground for reversal except where the trial court relies on that evidence

in arriving at its findings. *Jaron Corp. v. Pellet,* 866 S.W.2d 897, 901 (Mo.App. S.D. 1993). We are, therefore, unable to discern that Petitioner was prejudiced as she argues in this point. Petitioner's first point is denied.

■ In her second point, Petitioner contends that the trial court erroneously applied or declared the law in finding for the Tracys and Western on the basis that a conservator is not liable for the dissipation of estate assets in the absence of personal fault. She argues that a conservator has responsibility for the estate assets until discharged by the court, which must be preceded by approval of a final settlement, an order to distribute the assets, and a receipt from the successor conservator.

A review of pertinent statutes is necessary in considering this point. Section 475.130 provides, in pertinent part:

> 1. Conservator of the estate of a minor or disabled person shall, under supervision of the court, protect, preserve and manage the estate, invest it prudently, apply it as provided in this code, account for it faithfully, perform all other duties required of him by law, and at the termination of the conservatorship deliver the assets of the protectee to the persons entitled thereto. In protecting, preserving, managing and investing the estate, the conservator of the estate is under a duty to use the degree of care, skill and prudence which an ordinarily prudent man uses in managing the property of, and conducting transactions on behalf of, others.

Section 475.083 provides, in part:

> 1. The authority of a . . . conservator terminates:
>
> . . .
>
> (3) Upon revocation of the letters of the . . . conservator;
>
> (4) Upon the acceptance by the court of the resignation of the . . . conservator;
>
> . . .
>
> 3. Notwithstanding the termination of the authority of a conservator, he shall contin-

ue to have such authority as may be necessary to wind up his administration.

Section 475.290 provides, in part:

1. Conservators shall make final settlement of their conservatorship at a time fixed by the court, either by rule or otherwise, within sixty days after termination of their authority. For the purpose of settlement, the conservator shall make a just and true exhibit of the account between himself and his protectee, and file the same in the court having jurisdiction thereof, and cause a copy of the account, together with a written notice stating the day on which and the court in which he will make settlement, to be delivered to his protectee or, in case of revocation or resignation, to the succeeding conservator ... at least twenty days before the date set for settlement.

Section 475.300 provides:

The court shall order payment of the amount found to be due, and the rendition of any effects, property, rights or credits belonging to the protectee, to the protectee, or to the successor of the conservator, or to the personal representative of the protectee, or other person designated by the court, as the case may be.. . .

In entering its judgment, the trial court acknowledged Petitioner's contention that the Tracys improperly transferred the estate's assets to Dawn Pride because she never posted a bond and was never issued letters of conservatorship.[2] It also acknowledged her contention that since the Tracys were never discharged as conservators, their duty to "protect, preserve and manage the estate" continued until Petitioner reached age 18, "and [the Tracys] therefore remain strictly liable for the subsequent misuse and misappropriation of conservatorship funds by [Dawn Pride]." Likewise, it noted Petitioner's argument that since Western was never discharged and its bond never re-

leased, it remained liable to Petitioner on that bond.

The trial court found, however,:

... that the Missouri Probate Code does not impose a standard of strict liability upon conservators. Rather, Missouri law requires '[i]n protecting, preserving, managing and investing the estate, the conservator of the estate is under a duty to use the degree of care, skill and prudence which an ordinarily prudent man uses in managing the property of, and conducting transactions on behalf of, others." Section 475.130.1, RSMo. While this Court can find no reported decision applying the above statutory standard, which was enacted in 1983, it is clear that the statutory standard is not a standard of strict liability, but a standard which requires some fault or negligence on the part of the conservator before liability will be imposed.

The trial court also noted that its conclusion was supported by § 475.132 which provides, in part:

2. The conservator is individually liable for obligations arising from ownership or control of property of the estate or for torts committed in the course of administration of the estate only if he is personally at fault.

The trial court concluded that the Tracys did not breach their fiduciary duty to Petitioner, and were not personally at fault. In doing so, it went to considerable length in reciting evidence supporting that conclusion, including the following: (1) the Tracys submitted their resignations as conservators on June 27, 1991; (2) they were present in the courtroom when the judge announced that the purpose of the hearing was "to rule on the petition for termination of the present conservatorship estate for [Petitioner's brother] and [Petitioner]"; (3) they heard the court announce that their Final Settlement was approved and that the court had "executed Order of Discharge, discharging [the Tracys] as co-conservators for the estate of [Petition-

2. Section 475.100 provides, in part:
Every conservator of the estate of a minor ... before entering upon the duties of his office, shall execute and file a bond, approved by the court.. . .

Section 475.105 provides, in part:
1. When a duly appointed ... conservator has given bond, as required by law, and the bond has been approved, letters under the seal of the court shall be issued to him.. . .

er's brother] and [Petitioner]" and accepting their resignations as Petitioner's conservators;[3] (4) the court stated in their presence that it was appropriate to appoint a new conservator since "it had on this date accepted the resignations of the Tracys in connection with the conservatorship"; (5) the Tracys received a copy of the order reciting that their resignations as conservators were accepted and that their letters of conservatorship were revoked; and (6) the Tracys carried out the instructions they received from both the court and counsel to disburse the conservatorship funds. There was also evidence that the Tracys were not told by anyone that they should wait until Dawn Pride filed a bond or until other orders were signed by the court. The trial court concluded that "[t]here was not a scintilla of evidence that the Tracys were negligent or that they personally profited from any transaction related to the conservatorship."

Petitioner relies heavily on *Estate of Kauppi v. Bridges,* 462 S.W.2d 694 (Mo. 1971), a case involving a guardian's transfer of guardianship funds to himself as the executor of the deceased ward's estate. The guardian, who was bonded, filed a "settlement to death" after the demise of the ward. The guardian was also appointed executor of the deceased ward's estate "without bond." The settlement in the guardian's estate was never approved by the court, and there was no order directing the guardian to pay the balance of the guardianship funds to himself as executor. He nevertheless transferred the funds to himself as executor, and thereafter expended a substantial amount of the funds for his own personal purposes. He was subsequently removed as executor. The newly appointed executrix filed suit against the guardian and his bonding company, resulting in a judgment against both. On appeal, the bonding company argued that there had been a complete transfer of the guardianship funds before any conversion occurred, thereby relieving the surety. In affirming the judgment, the Missouri Supreme Court noted that pursuant to § 475.130, a guardian "shall, under supervision of the court, protect and preserve the estate ... apply it as provided in this code, ... perform all other duties required of him by law, and at the termination of the guardianship, deliver the assets of the ward to the persons entitled thereto." Furthermore, pursuant to § 475.290, the guardian is required to make final settlement within sixty days after the termination of their authority, and the court "shall proceed to examine the accounts of the guardian, correct all errors therein, ... and make a final settlement with the guardian." Finally, pursuant to § 475.300, "the court shall order payment of the amount found to be due, and the rendition of any effects, ... belonging to the ward, or to the successor of the guardian ... or other person designated by the court ..." The Supreme Court concluded that:

> To recapitulate, there was no final settlement as guardian and no court approval, in short, there was no act by [the guardian] as guardian in compliance with the law or with the court's orders to terminate and finally close his guardianship. Plainly, obtaining approval of his restated final settlement, complying with the court's orders and finally a court discharge were essential prerequisites to his release in his capacity as guardian.

*Id.* at 699. In holding as it did, in its opinion, the Supreme Court noted that it was deciding the case "in the circumstances of this particular record, by reason of the plain implications from the noted cases, the equitable maxims and the governing statutes...." *Id.* at 700.

In the instant case, the Tracys filed a settlement which was titled "Final Settlement." The final settlement covered the joint conservatorship estate for Petitioner and her brother, and included expenditures on behalf of Petitioner as well as income on monies being administered for her. The probate division approved that settlement. Therefore, to the extent that *Kauppi* was

---

**3.** As noted in the discussion of Petitioner's first point, the transcript contains a statement by the judge of the probate division indicating that he had executed an order of discharge, discharging the Tracys in the conservatorship of both Petitioner and her brother. While both sides seem to agree, as found by the trial court, that no such order was actually entered, the trial court found that the Tracys were present and heard the judge make that statement.

decided on the basis of the lack of a final accounting by the guardian, it is distinguishable from the case at bar.

We also note other factual distinctions between the case at bar and *Kauppi*. For instance, here, there is no suggestion that the Tracys received any personal benefit from any of the conservatorship assets. There is no suggestion that they were guided by any improper purposes in transferring the funds to the newly appointed conservator, Dawn Pride. Also, importantly, there was evidence that the transfer of the funds from the Tracys to Dawn Pride, which occurred on the day their final settlement was approved, their resignations were accepted, and their letters of conservatorship were revoked, was done with the approval of the judge and the attorney appointed as Petitioner's guardian ad litem. There was no evidence that the Tracys were told or given any indication that they should forestall doing so until a bond was filed for Dawn Pride or further steps were taken in connection with her appointment.

■ Additionally, we note that § 475.132 was not in effect when *Kauppi* was decided. Subsection 2 of that statute provides, in part, that a conservator is individually liable for obligations arising from control of property of the estate only if he is personally at fault. Petitioner theorizes that this statute relates only to liability for third-party claims against a conservatorship estate, and not to claims between the protectee and the conservator or the surety for improper administration of the estate. In support, she cites *Silvey v. Rosenauer*, 814 S.W.2d 680 (Mo.App. W.D.1991), involving a third-party claim against a conservator, both individually and in his capacity as conservator, for fraud in connection with the sale of estate assets. The trial court dismissed the claim against the estate. In reversing that decision, the appellate court relied on subsection 3 of § 475.132, which specifically authorizes claims against the conservator in his fiduciary capacity, and therefore against the estate, based on torts committed in the course of the administration of the estate.

■ Subsection 2 of § 475.132, however, does not contain language similar to that found in subsection 3 which relates to claims against an estate based on contracts or torts of the conservator. Rather, it authorizes individual liability of the conservator for obligations arising from the control of property of the estate "only if he is personally at fault." There is no language in § 475.132, the plain reading of which would lead one to believe that subsection 2 is limited to liability for claims by third parties. If the legislature had so intended, it would have been an easy matter to have included that limitation. A fundamental objective of statutory interpretation is to ascertain the intent of the legislature from the language of the statute and, if possible, give effect to that intent. *Kansas City Star Co. v. Fulson*, 859 S.W.2d 934, 938 (Mo.App. W.D.1993). The language of the statute is to be given its plain and ordinary meaning. *Id.*

Earlier cases relating to guardians have held that they are neither held to standards of strict liability in dealing with a ward's estate, nor are they insurers of that estate. *See Estate of Zeppenfeld v. Grand*, 593 S.W.2d 890, 893–94 (Mo.App. E.D.1979). We agree with the trial court's conclusion that conservators are not held to a standard of strict liability in light of the provisions of § 475.130.1, which requires that a conservator use the degree of care, skill and prudence which an ordinarily prudent man uses in managing the property of, and conducting transactions on behalf of, others, and § 475.132.2, which imposes individual liability on a conservator "only if he is personally at fault." Certainly, the standards under §§ 475.130.1 and 475.132.2 do not require, under these facts, that the Tracys be held responsible for the defalcation of others. We caution, however, that this conclusion is responsive to the particular facts of this case. Petitioner's second point is denied.

The Tracys and Western filed a motion to dismiss the appeal and for damages for frivolous appeal. That motion is denied. The judgment is affirmed.

SHRUM, P.J., and BARNEY, J.,concur.