# IN RE the MARRIAGE OF A.J.N. & J.M.N.:
## A.M.N., Appellant,

v.

## A.J.N., Respondent.

Court of Appeals

*No. 86–1819. Submitted on briefs June 25, 1987.—Decided August 25, 1987*
(Also reported in 414 N.W.2d 68.)

For the appellant there was a brief submitted by *Stephen J. Holden* of Green Bay.

For the respondent there was a brief submitted by *Frederick C. Wieting* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. A.M.N., by her guardian ad litem, appeals part of the divorce judgment between J.M.N., her mother, and A.J.N., her mother's former husband. A.M.N. argues that the trial court erred by failing to apply the doctrine of equitable estoppel to prevent the husband from denying paternity and avoiding a duty to pay child support. She also contends that the trial court erroneously admitted the results of blood tests taken before her guardian ad litem was appointed.

Although in appropriate cases child support liability may be imposed upon a nonbiological parent on the basis of equitable estoppel, we conclude that in this case the facts established at trial are insufficient to invoke estoppel. We also agree with the trial court's admission of the blood test results.

The mother and husband were married on November 9, 1979. It is undisputed that the mother was pregnant prior to their marriage. A.M.N. was born on March 10, 1980, and the husband was named as her father on the birth certificate. The couple lived together with A.M.N. until they filed for divorce in June, 1985. During this time, the husband assumed A.M.N. was his child and treated her as his child. In September, 1985, after he questioned whether he was A.M.N.'s father, the couple and the child voluntarily agreed to take a blood test to determine A.M.N.'s paternity. This was done without a court order. The blood test results indicated that he was not A.M.N.'s biological father.

A.M.N. was not named as a child of the marriage in the divorce action. The court, however, became

101

aware of A.M.N.'s existence when the blood test results were submitted. At that time, the court appointed a guardian ad litem for A.M.N.

There was conflicting testimony as to whether, prior to their marriage, the mother told the husband that she may have become pregnant by another man. The husband testified that when the child was eight months old, the mother first told him that there was a slight possibility he might not be A.M.N.'s father. He indicated that he thought no more about it until the divorce. On the other hand, the mother testified that prior to their marriage, she told him that there was a slight possibility that he might not be the father. She testified that he responded by telling her that he would "love the child regardless." The mother also testified that she had never known the name of A.M.N.'s biological father and that if she had not married, she would have lived with her parents and had the baby. It is not contended that the mother gave up any child support rights from the natural father in reliance on any representations of her husband.

Although the trial court expressed some concern about whether equitable estoppel applied to child support cases, it did consider the doctrine at the trial and rejected its application to the facts of this case. The court held that, even viewing the testimony most favorable to the mother and child, the husband had not made any representations that would estop him from denying paternity and support for A.M.N. The court concluded that the husband had sufficiently rebutted the presumption of paternity and, therefore, it did not enter a child support order.

The first issue is whether a nonbiological parent can be equitably estopped from denying paternity and, if so, whether, under the facts of this case, the trial

court erred by failing to apply the doctrine to prevent the husband from denying paternity.

Under sec. 767.45, Stats., a husband who has a child born during the marriage is entitled to bring an action to rebut the presumption of paternity under sec. 891.41, Stats. The husband has the burden of rebutting this presumption. *See* sec. 767.45(5m), Stats. Whether the trial court may apply the doctrine of equitable estoppel to prevent the husband from denying paternity and child support is a question of law that we decide without deference to the trial court. *See J.H. Cohn & Co. v. American Appraisal Associates, Inc.,* 628 F.2d 994, 1000 n. 7 (7th Cir. 1980).

Generally, a husband is not bound to support nonmarital children born to his wife. Although Wisconsin has not articulated a theory of equitable estoppel specifically applicable to child support proceedings, many other jurisdictions have done so. *See* cases collected in Annotation, *Liability of mother's husband, not the father of her illegitimate child, for its support,* 90 A.L.R.2d 583 (1963); 10 C.J.S. *Bastards,* Sec. 18 (1938); 10 Am. Jur. 2d *Bastards,* sec. 67 (1963). We agree that if the facts are appropriate, equitable estoppel should be applied to prevent a nonbiological parent from denying paternity or child support.

In the leading case of *Clevenger v. Clevenger,* 189 Cal. App. 2d 658, 11 Cal. Rptr. 707 (1961), a husband supported and acted for over a decade as the father to a nonmarital child born to his wife during their marriage. At the divorce, the wife sought child support from the husband, claiming that he was estopped from denying liability for the child's support. The *Clevenger* court remarked that there is an innate

immorality in the conduct of an adult who for over a decade accepts and proclaims a child as his own, but then, in order to be relieved of the child's support, announces and relies upon the child's illegitimacy. Thus, it concluded that if the facts would establish an estoppel as to the child, the husband would be liable for the child's support.[1]

Since *Clevenger*, other jurisdictions have adopted the estoppel doctrine to impose child support liability upon a nonbiological father. For a discussion of these cases, *see Knill v. Knill*, 510 A.2d 546 (Md. 1986). In each of these jurisdictions, the equitable estoppel theory consists of three basic elements: (1) representation, (2) reliance, and (3) detriment. *Id.* at 550. Similarly, in other contexts, Wisconsin has held that for equitable estoppel to apply, three factors must be present: (1) action or nonaction that induces (2) reliance by another (3) to his detriment. *Mercado v. Mitchell*, 83 Wis. 2d 17, 26–27, 264 N.W.2d 532, 537 (1978).

Most jurisdictions require proof of either a specific promise by a stepfather to his wife that he will financially support her child, or an unambiguous statement to the stepchild in which the stepparent purports to be the child's natural parent. Once it has been established that a representation has been made, a spouse or child asserting the equitable estoppel theory must show reliance on the representation and that the reliance resulted in detrimental effects.

---

[1]Although the court in *Clevenger* adopted the principle of equitable estoppel in child support cases, it held that under the particular facts of that case it was not applicable.

We are mindful that in certain factual situations, our Wisconsin Supreme Court has applied a traditional common-law rule, rather than a theory of equitable estoppel, to hold that a husband has no duty to support a nonmarital child. In *Vorvilas v. Vorvilas,* 252 Wis. 333, 31 N.W.2d 586 (1948), the court held that a husband was not liable for child support where his wife had fraudulently concealed her pregnancy by another man. In *Schmidt v. Schmidt,* 21 Wis. 2d 433, 124 N.W.2d 569 (1963), the court held that where the evidence showed that the husband did not father his wife's child born during their marriage, he was entitled to deny paternity at the divorce proceeding, despite the fact that he had signed the birth certificate and baptismal certificate, had acted as the child's natural father for three years, and had never denied paternity until the divorce proceeding. The court concluded that although the husband knew the child was not his, these acts were not sufficient to preclude his subsequent disavowal of paternity. *Id.* at 439, 124 N.W.2d at 572.

We hold that equitable estoppel is available for use in Wisconsin child support proceedings and that it was therefore appropriate for the trial court to consider its application in this case. The three elements that must be proven to assert equitable estoppel include: (1) an unequivocal representation of intent to support the child; (2) reliance on that representation by the natural parent or child; and (3) detriment to the natural parent or child as a result of such reliance.

Applying this theory, and viewing the evidence most favorably to the mother or child, the trial court correctly concluded that the husband was not es-

topped from denying paternity and the duty to pay child support. When the husband said that he would love the child even if she was not his, there is nothing in this statement to indicate that he intended to provide financial support for the child if the couple divorced. Moreover, even if this statement could be construed as a promise of future support, there is no evidence of reliance or detriment. The mother had engaged in a one time sexual encounter with the unknown biological father. She could not identify him, and support from that person was not an option. She testified that, absent her marriage to the husband, her only option was to live with her parents and have the child. Although the husband treated the child as his for five years, we decline to permit the establishment of estoppel based solely upon this basis.

Voluntary support of nonmarital children or stepchildren should not be discouraged. Therefore, while it is difficult to understand the husband's decision to abandon the child, use of estoppel to impose a support obligation on a nonbiological parent must be applied cautiously. If the law imposes a permanent duty on persons who undertake to support a child they did not parent, they may choose to avoid supporting the child in order to not find themselves permanently obligated. Additionally, we should not apply the equitable estoppel doctrine to force a support obligation upon a nonbiological parent merely because the husband developed a close relationship with the child and nurtured them into a family unit while "acting" as the natural parent. This type of family relationship should be encouraged rather than discouraged through the possible consequence of becoming permanently financially obligated for child support.

■
Finally, we reject A.M.N.'s contention that the court should have excluded the blood test results because they were obtained prior to the appointment of a guardian ad litem. *See* sec. 767.045, Stats. The relevant part of this statute reads:

> In any action affecting the family in which the court has reason for special concern as to the future welfare of the minor children, in which the custody of such children is contested, and in any action in which paternity is contested under s. 891.39, the court shall appoint an attorney admitted to practice in this state as guardian ad litem to represent the interests of children as to custody, support and visitation.

Before the court knew of A.M.N.'s existence, the mother, child, and husband had voluntarily taken the blood tests. The paternity was not contested at any time during the divorce proceeding until after the blood test results were submitted. Also, the timing of the guardian ad litem's appointment had no effect on the blood test results. This is a test that the court would have ordered if the results had not already been available. The guardian ad litem had the option of requesting and obtaining an alternative blood test if he had some question about the test's validity. Consequently, we fail to see how A.M.N. was prejudiced by the blood test. The trial court therefore correctly denied the motion to exclude the blood test results.

*By the Court.*—Judgment affirmed.