Douglas M. WEEMS, et al., Appellants,

v.

Mary J. MONTGOMERY,
et al., Respondents.

No. WD 62761.

Missouri Court of Appeals,
Western District.

Feb. 17, 2004.

Douglas M. Weems and Dennis J. Owens, Kansas City, MO, for Appellants.

Kevin E. Glynn, Kansas City, MO, for Respondents.

Before LISA WHITE HARDWICK, P.J., PAUL M. SPINDEN and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Appellants, Douglas and Kerry Weems, filed a petition against respondent, Mary Jean Montgomery, contending that she committed fraud when she sold her mother's (Anna Belle Randolph) home to the appellants. The circuit court, probate division, dismissed appellants' petition. We conclude that it improperly relied upon evidence beyond the pleadings and that appellants stated a claim for relief against Ms. Montgomery individually. We further conclude that appellants stated a claim for relief against Ms. Montgomery in her capacity as administrator of her mother's estate. We reject appellants' argument that the probate division of the circuit court should have re-opened the estate under section 472.013 [1] due to fraud. We reverse and remand the case for further proceedings.

## I. BACKGROUND

In 1996, Mr. and Mrs. Weems purchased a home formerly owned by Ms. Anna Belle Randolph. They purchased the home from Ms. Randolph's daughter, Mary Jean Montgomery, who was the conservator of her mother's estate. When the Weems attempted to sell the home in 1999, they had difficulty due to the presence of an underground heating oil tank on the property. The Weems claim that they were

1. Unless otherwise indicated, all statutory references are to RSMo. (2000).

unaware of the tank before they bought the home.

In August 2001, the Weems filed a two-count petition against Ms. Montgomery for fraud and constructive fraud. By this time, Ms. Randolph had died. In their petition, the Weems named Ms. Montgomery as a defendant in three separate capacities: (1) individually, (2) as conservator of Ms. Randolph's conservatorship estate, and (3) as administrator[2] of Ms. Randolph's estate. The Weems alleged that Ms. Montgomery, as well as her agents and representatives, had misrepresented the condition of the property by denying the existence of any underground tanks. Ms. Montgomery filed two separate motions to dismiss related to the claims against her. The probate division of the circuit court dismissed all of the claims with prejudice.

The Weems appeal the dismissal of the claims against Ms. Montgomery individually and in her capacity as administrator of her mother's estate.

## II. Standard of Review

### A. The Motions to Dismiss Were Not Transformed into Motions for Summary Judgment

The parties disagree over the standard of review that governs this appeal. Although this appeal involves a judgment in which the circuit court "dismissed" the Weems' claims, Ms. Montgomery submits that we should review the appeal under a summary judgment standard because the circuit court considered matters beyond the pleadings in its ruling, thereby trans-forming the motions to dismiss into motions for summary judgment.

Rule 55.27(a)[3] contemplates the transformation of a motion to dismiss into a motion for summary judgment when the parties submit for the court's consideration matters outside of the pleadings. Rule 55.27(a) says in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04. All parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 74.04.

Such a transformation may occur even when the circuit court characterizes its ruling as a dismissal. *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 498–99 (Mo. banc 1991). In *King*, a building owner filed a motion to dismiss a subcontractor's two-count petition for breach of contract and tortious interference of contract. *Id.* at 498. The owner attached four exhibits to its motion: copies of the original petition in a previously-litigated case arising out of the same facts, the underlying contract, the court order in the previously-litigated case granting the owner's motion for directed verdict, and the court's judgment in that case. *Id.* at 499. The subcontractor's response to the motion included copies of the jury instructions from the previously litigated case, a partial transcript of the testi-

2. While the circuit court's judgment and many of the documents in the record characterize this claim as a claim against Ms. Randolph in her capacity as "personal representative" of Ms. Randolph's estate, appellants' petition refers to Ms. Montgomery as the "administrator" of her mother's estate. To avoid confusion when discussing this claim, we have referred to the word that appellants use in their petition.

3. Unless otherwise indicated, all rule references are to the Missouri Court Rules (2003).

mony in that case, and a copy of the owner's motion for directed verdict in that case. *Id.*

The Missouri Supreme Court held that the "acceptance and consideration of this evidence by the court effectively 'transformed' the proceeding to one under Rule 74.04." *Id.* In so doing, the court rejected the argument that due process always requires a hearing before the trial court may rule on such a "transformed" motion for summary judgment. The court said:

> [The subcontractor] had abundant opportunity to present any evidence it had and seven months after receiving [the owner's] motion, [the subcontractor] filed its affidavit with more than 50 pages of exhibits attached. The court had before it the original petition in *King I*, all relevant portions of the transcript addressing [the owner] and [the subcontractor] from the previous action, a copy of the directed verdict order, and a copy of the judgment from *King I*. We are at a loss to see what further, short of calling the trial judge from *King I* as a witness, [the subcontractor] could have put before the hearing court.

*Id.* at 500. *See also Hatfield v. McCluney*, 893 S.W.2d 822, 829 (Mo. banc 1995) (litigant was not denied a reasonable opportunity to present material pertinent to claim where court held evidentiary hearing in response to estate's motion to dismiss, parties were aware that dispositive issue was applicability of section 473.444, no complaint was made at or before hearing that evidence was being presented, and litigant's attorney did not request continuance of hearing to present additional evidence or affidavits).

■ Like the movant in *King*, Ms. Montgomery attached several exhibits to her motions to dismiss, including a copy of the residential real estate contract; a copy of the seller's disclosure statement; a copy of the certificate of the clerk of the pro-

bate court confirming the decedent's death; a copy of the probate division's order regarding the Weems' objections to the conservator's final settlement; a copy of the affidavit of publication and notice of filing of an affidavit in and of an estate of less than $40,000; and the affidavit of Ms. Montgomery. In its judgment, the circuit court relied upon some of these exhibits as grounds for dismissing appellants' claim against Ms. Montgomery as an individual.

Unlike the party opposing dismissal in *King*, however, the Weems did not submit any evidence beyond the pleadings. They responded to the motions to dismiss by objecting, among other reasons, that the circuit court should disregard Ms. Montgomery's factual assertions because such assertions were "completely out of place in a motion to dismiss" and "not appropriately considered in a motion to dismiss." By their actions, therefore, the Weems did not automatically convert the motions to dismiss into motions for summary judgment. *Cf. Geary v. Mo. State Employees' Ret. Sys.*, 878 S.W.2d 918, 921 (Mo.App. W.D. 1994) ("When ... the plaintiff introduces evidence beyond the pleadings, [it] is charged with knowledge that the defendant's motion is thereby 'automatically converted to a motion for summary judgment.'") (quoting *Hyatt Corp. v. Occidental Fire & Cas. Co.*, 801 S.W.2d 382, 392 (Mo.App. W.D.1990)).

The Weems also lacked any notice that the circuit court intended to treat the motions to dismiss as summary judgment motions. *Cf. King*, 821 S.W.2d at 500 (acknowledging generally that a party should have an "opportunity to assemble and present evidence in support of his position"); *Hatfield*, 893 S.W.2d at 829 (noting that the court held an evidentiary hearing in response to the motion to dismiss and that the party opposing the motion did not object to consideration of such evidence at the hearing). Accordingly, we conclude

that the motions to dismiss were not transformed into motions for summary judgment and we review this appeal under the standard that governs motions to dismiss.

## B. Standard of Review for Motions to Dismiss

We review *de novo* the grant of a motion to dismiss, examining the pleadings to determine whether they invoke principles of substantive law. *See Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 409–10 (Mo.App. W.D.2000). "The pleadings are liberally construed and all alleged facts are accepted as true and construed in a light most favorable to the pleader." *Id.* at 410. "In making our determination, we may not address the merits of the case or consider evidence outside the pleadings." *Brennan By and Through Brennan v. Curators of the Univ. of Mo.*, 942 S.W.2d 432, 434 (Mo.App. W.D.1997).

## III. LEGAL ANALYSIS

### A. Dismissal of the Claim Against Ms. Montgomery Individually

#### 1. Ms. Montgomery Can Be Held Individually Liable for Her Torts Under Section 475.132.2

The Weems contend that Ms. Montgomery is individually liable for statements that she made—either directly or through her agents and representatives—while she was conservator of her mother's estate. "The conservator is individually liable for obligations arising from ownership or control of property of the estate or for torts committed in the course of administration of the estate only if he is personally at fault." § 475.132.2. Case law interpreting section 475.132.2 is sparse.[4] Section 475.132.2 is, however, nearly identical to two provisions of the Uniform Probate Code (UPC), one of which applies to conservators[5] and one of which applies to personal representatives.[6] Although the comment accompanying the UPC conservatorship provision is not especially illuminating, the comment accompanying the substantially similar personal representative provision explains that "[t]he personal representative would be personally liable only if an agent for a corporation would be under the same circumstances, and the claimant has a direct remedy against the quasi-corporate property." Comment to Uniform Probate Code § 3–808, 8 U.L.A. 259 (1998).

Under apparently similar circumstances, one Florida court has held that a plaintiff's failure to timely comply with Florida's

---

4. Only two reported Missouri cases have addressed section 475.132. *See Silvey v. Rosenauer*, 814 S.W.2d 680, 681–82 (Mo.App. W.D.1991) (recognizing that estate of protectee would not be liable at common law to third person for damages resulting from conservator's fraud, but that the common law rule has been abrogated by section 475.132); *In re the Estate of Ayers*, 984 S.W.2d 193, 200 (Mo.App. S.D.1998) (recognizing that section 475.132 applies not only to claims by third parties against conservator, but also to claims by the protectee against the conservator for improper administration of estate, and holding that conservators are not subject to strict liability for transferring funds to third parties who are guilty of defalcation).

5. The Uniform Probate Code provision governing conservators says: "The conservator is personally liable for obligations arising from ownership or control of property of the estate or for torts committed in the course of administration of the estate only if personally at fault." Uniform Probate Code § 5–428(b), 8 U.L.A. 415 (1998).

6. The Uniform Probate Code provision governing personal representatives says: "A personal representative is individually liable for obligations arising from ownership or control of property of the estate or for torts committed in the course of administration of the estate only if he is personally at fault." Uniform Probate Code § 3–808(b), 8 U.L.A. 258 (1998).

non-claim statute would not bar an action against a personal representative individually, where the plaintiff claimed that the personal representative wrongfully diverted funds belonging to the plaintiff into the estate account. *Prescott v. Stanley,* 710 So.2d 674, 675 (Fla.Dist.Ct.App.1998).[7] The court reasoned that "[i]f [the personal representative] is held accountable for his improper actions or omissions while acting under the power of attorney, he and not the estate will suffer the consequences." *Id.*

We conclude that section 475.132.2 allows the Weems to bring a claim against Ms. Montgomery, individually.

**2. Individual Liability Based Upon Representations Made By Ms. Montgomery**

■ Because we conclude that section 475.132.2 allows such a claim, the next question is whether the Weems' petition stated a claim against Ms. Montgomery individually. The petition alleges that the "Defendants entered into a contract selling the house ... to the Weems" and that "[t]he disclosure statement accompanying the contract on that sale expressly represented that there were no underground tanks." The identity of the person making this representation could be more precise. *See, e.g., Williams v. Belgrade State Bank,* 953 S.W.2d 187, 189 (Mo.App. S.D.1997) (petition alleging fraud should "state which individuals made representations and whether they had authority to do so."). On the other hand, the petition refers generally to the "defendants," *i.e.* Ms. Montgomery, and further alleges that "Defendants represented that there was no underground tank...." In any event, Ms. Montgomery apparently never filed a motion for more definite statement, there-

by waiving any objection that appellants did not plead fraud with sufficient particularity. *See, e.g., Clark v. Olson,* 726 S.W.2d 718, 719 (Mo. banc 1987).

The circuit court reasoned that this alleged representation would not support a claim against Ms. Montgomery individually because Ms. Montgomery completed a residential real estate disclosure form, in which she represented that she had not lived in the home for forty years, that she was not aware of any underground tanks, and that the information provided was accurate to the best of her knowledge. To reach this conclusion, however, the circuit court had to consider, and then weigh, evidence beyond the pleadings by examining the disclosure form that Ms. Montgomery attached to her motions to dismiss. While consideration of this document would have been appropriate in a summary judgment proceeding, it was not appropriate here, where the only question was whether the petition invoked principles of substantive law that would, if proven, entitle the Weems to relief. *See id.* at 721 (where home sellers relied upon evidence outside of pleadings to support argument that home buyers were not entitled to rely upon sellers' representations, the court would not entertain the argument as grounds for dismissing the buyers' petition because "in the review of the dismissal for failure to state a claim, only the allegations of the petition are to be considered.").

**3. Individual Liability Based Upon Representations Made By Agents**

■ The petition also alleges that "[w]hile conducting an inspection, the Weems noticed a piece of black metal extending from the ground in the backyard. The Weems asked about the metal and

---

7. This case appears in the annotations to the Uniform Probate Code, 8 U.L.A. § 3–808 (Supp.2003).

were told by defendants' agents and representatives that the metal was part of a drainage system." In the second count, for constructive fraud, the petition further alleges that "[d]efendants represented that there was no underground tank, and that the metal was part of a drainage system."

The circuit court deemed these allegations legally insufficient because "Plaintiffs do not and, under the circumstances, cannot allege that Montgomery knew that the real estate agent misrepresented what the 'black metal' was." Under Missouri law, however, a principal involved in the sale of property is liable for such representations whether they were made with or without her knowledge or consent. *Cannon v. Bingman,* 354 S.W.2d 894, 901 (Mo.App. 1962) (property buyers could rescind contract for sale of property based upon misrepresentations made by sellers' agent regarding boundary line of property). *See also Tietjens v. Gen. Motors Corp.,* 418 S.W.2d 75, 84, 87 (Mo.1967) (acknowledging that principal must answer for any fraud that an agent perpetrates while pursuing principal's business within the scope of agency and distinguishing between authority of agent to commit fraud—which is not within scope of agency—and authority to transact principal's business in the course of which the agent commits fraud).

 The circuit court also deemed these allegations legally insufficient because the real estate agent who made the representations was the dual agent for both the Weems and Ms. Montgomery. A dual agency arises "[w]here two or more principals employ the same agent, whether as a means of dealing with one another or to protect their common interests." *Whittlesey v. Spence,* 439 S.W.2d 195, 199 (Mo.App.1969) (internal quotation marks and citations omitted). In a dual agency one principal cannot charge the other principal, who is not at fault, with the misconduct of the common agent because the agent "owes no more duty to one than to the other; each of the principals is under an equal duty to supervise the agent and to protect his own interest, and there is no reason why the misconduct of the agent should be imputed to one principal rather than to the other." *Id.* (internal quotation marks and citations omitted). *See also, Thomason v. Miller,* 555 S.W.2d 685, 688 (Mo.App.1977) (same).

The existence of a dual agency in this case ultimately may prevent appellants from attributing the real estate agent's representation to Ms. Montgomery as a matter of law because appellants do not allege that Ms. Montgomery knew about or otherwise participated in this representation, except constructively. Again, however, the dual agency consent agreement was not part of the pleadings in this case and should not have been considered when determining whether the petition invoked principles of substantive law that would, if proven, entitle the Weems to relief. *See Clark,* 726 S.W.2d at 721.

For these reasons, we conclude that the petition should not have been dismissed for failure to state a claim as to Ms. Montgomery individually. Point one is, therefore, granted.

## B. Dismissal of the Claim Against Ms. Montgomery in Her Capacity as Administrator

 The circuit court dismissed the Weems' claim against Ms. Montgomery in her capacity as administrator of her mother's estate because "it is clear that no letters testamentary or of administration were granted within one year of Ms. Randolph's date of death" and "[s]ection 473.050.6 prohibits the issuance of letters unless application therefore is made within one year from the date of death of the

decedent." [8] The court also dismissed the claim because the court concluded that the Weems failed to comply with section 473.444, which "bars all claims against a decedent's estate of the type asserted by [the Weems], if the same are not filed within one year of the date of the decedent's death." [9]

If true, these would indeed be grounds for dismissing the petition in this case. The problem is that the face of the petition does not reveal when Ms. Randolph died. As a result, we cannot say as a matter of law that the Weems failed to comply with either section 473.050 or section 473.444.[10] It may well be that they did not comply.[11] But our standard of review precludes us from addressing the merits of the action or considering evidence beyond the face of the petition. Accordingly, we must conclude that the petition states a claim against Ms. Montgomery in her capacity as administrator of her mother's estate.[12]

8. Section 473.050.6 says: "Except as provided in section 537.021, RSMo, no letters of administration shall be issued unless application is made to the court for such letters within one year from the date of death of the decedent."

9. Section 473.444 says: "Unless otherwise barred by law, all claims against the estate of a deceased person, other than costs and expenses of administration, exempt property, family allowance, homestead allowance, claims of the United States and claims of any taxing authority within the United States, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, which are not filed in the probate division, or are not paid by the personal representative, shall become unenforceable and shall be forever barred against the estate, the personal representative, the heirs, devisees and legatees of the decedent one year following the date of the decedent's death, whether or not administration of the decedent's estate is had or commenced within such one-year period and whether or not during such period a claimant has been given any notice, actual or constructive, of the decedent's death or of the need to file a claim in any court. No contingent claim based on any warranty made in connection with the conveyance of real estate is barred under this section."

10. In their brief, the Weems do not address these statutory provisions. They contend only that any failure on their part to comply with Missouri's non-claim statute, section 473.360, merely bars them from recovering against the estate on any judgment that they may obtain, but does not bar them from bringing this action or obtaining judgment. As far as it goes, that is true. *See, e.g., Dane v. Cozean,* 584 S.W.2d 120, 122 (Mo.App. E.D.1979) (if plaintiff failed to comply with non-claims statute, that failure did not bar plaintiff from bringing action or obtaining judgment against estate administrator, but would preclude plaintiff from recovering on the judgment from any assets being administered upon in probate division). *See also* Francis M. Hanna, 4 Missouri Practice, Probate Code Manual § 473.370, p. 259 ("Missouri law does not prohibit the obtaining of a judgment against a decedent's personal representative in situations where the requirements of § 473.360 or § 473.367 have not been met. The operation of those statutes is merely to bar collection of the judgment against the assets of the estate, heirs or distributes. The judgment may be fully collectable against property not administered upon or against a liability insurance carrier."). But it also fails to meet the grounds on which the probate court dismissed the claim and, therefore, misses the point that statutory grounds other than section 473.360 could bar the claim even if section 473.360 does not.

11. The circuit court's judgment recites that she died on February 25, 1999.

12. It is unclear from the Weems' briefing whether they are complaining about the circuit court's dismissal of their claim against Ms. Montgomery in her capacity as conservator. Their second point ascribes error to the circuit court for dismissing the petition against "the estate of Anna Belle Randolph." The reference to a claim against the estate is misleading. "The personal estate of a decedent is not a legal entity. It cannot sue or be sued as such, and it cannot appeal as such." *Steiner v. Vatterott,* 973 S.W.2d 191, 194 (Mo. App. E.D.1998) (internal quotation marks and

## C. The Circuit Court Did Not Err in Refusing to Re–Open the Decedent's Estate Due to Fraud

 In their third point, the Weems contend that the circuit court erred when it refused to re-open Ms. Randolph's estate because of fraud. They rely upon section 472.013, which says, in pertinent part:

Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under [the probate] code, or if fraud is used to avoid or circumvent the provisions or purposes of this code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person, other than a bona fide purchaser, benefiting from the fraud, whether innocent or not. Any proceeding must be commenced within two years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than ten years after the time of commission of the fraud.

The Weems contend that Ms. Montgomery committed fraud in 1996, when she and her agents made certain representations about the property. Ms. Montgomery's mother was alive at that time, however; section 472.013 therefore does not apply here since the alleged fraud was not "perpetrated in connection with any proceeding or in any statement filed under [the probate] code." *Id. See also Estate of McCormack v. McCormack,* 676 S.W.2d 928, 931 (Mo.App. E.D.1984) (recognizing that section 472.013 "relates only to fraud in connection with any proceedings under the probate code not fraud rendered to or

against the decedent during his lifetime ...."). Accordingly, the Weems' third point is denied.

## IV. CONCLUSION

We conclude that the appellants have stated a claim for relief against respondent individually and in her capacity as administrator of her mother's estate. The judgment of the circuit court is reversed, and the case is remanded for further proceedings on the claims against the respondent individually and as administrator.

LISA WHITE HARDWICK, P.J. and PAUL M. SPINDEN, J. concur.

___

citation omitted). As a result, the personal representative is an indispensable party to any action pertaining to the decedent's estate. *Id.* To the extent that the Weems intended to challenge the circuit court's dismissal of the claim against Ms. Montgomery as conservator, we agree with the court that this claim is

barred and that it was, therefore, properly dismissed because a conservator's authority terminates upon the death of her protectee. *See* section 475.083.1(5) ("The authority of a guardian or conservator terminates ... [u]pon the death of the ward or protectee....").