Simuel JEFFERSON, Respondent,

v.

Darlene JEFFERSON, Appellant.

No. ED 83583.

Missouri Court of Appeals,
Eastern District,
Division One.

June 29, 2004.

---

1. Because Defendant's first point is dispositive, we need not consider Defendant's re- maining points.

Nadine V. Nunn, St. Louis, MO, for appellant.

Raymond Howard, St. Louis, MO, for respondent.

MARY R. RUSSELL, Judge.

Darlene Jefferson ("Wife") appeals from the judgment holding Simuel Jefferson ("Husband") not to be the father of her child, A.A.O.J. ("Daughter"), and dismissing her petition to have Husband declared Daughter's "equitable parent." Wife asserts the trial court erred in that it did not exercise its equity powers to find Husband to be Daughter's father because he supported Daughter since her birth. We disagree in that Missouri has not recognized the "equitable parent" theory. We affirm the judgment.

Simuel Jefferson ("Husband") and Darlene Jefferson ("Wife") were married in 1989. The parties had two children born during the marriage, and Daughter, who was born two years before the marriage. Daughter is the biological daughter of Wife. Acting on Wife's representation that he was Daughter's father, Husband held himself out as, and acted as, her father, as well as the father to the two other children.

Husband filed for dissolution in 2001. He sought court-ordered blood tests to determine the paternity of Daughter and one of the children born during the marriage after Wife revealed that she had sexual intercourse with other men before and during the marriage. The blood test excluded Husband as Daughter's biological father.[1]

In response to the results of the blood test, Husband filed a Petition for Determination of Father–Child Relationship, Order of Custody, and Reimbursement for Past Child Support. Wife moved to dismiss Husband's petition, asserting that he did not have standing to bring an action for determination of parent-child relationship under Missouri law. Wife also filed a Counter–Petition for Declaration of Equitable Parent–Child Relationship, which Husband moved to dismiss. The trial court denied Wife's motion to dismiss Husband's petition, and it sustained Husband's motion to dismiss Wife's counter-petition, finding that Husband is not Daughter's father. Wife's subsequent Motion to Reconsider was denied and she now appeals.

■ We will affirm the judgment in a judge-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

Wife asserts three points on appeal. In her first point, she argues that the court erred in sustaining Husband's motion to dismiss her Counter–Petition for Declaration of Equitable Parent–Child Relationship, in that the Court should have exercised its equity powers to declare Husband an "equitable parent." Her second point asserts the trial court erred in denying her motion to dismiss Husband's petition in that Husband did not have standing to bring an action for determination of parent-child relationship. Wife's third point asserts the trial court erred in not equitably estopping Husband from denying paternity. She asserts in all three points that the trial court's judgment was a misapplication of law in that it was not in Daughter's best interests.

Because Wife's first and third points assert that the trial court erred in not exercising its equity powers to decree Husband to be Daughter's father, we will address them first.

Wife's first point alleges that the court erred in dismissing her Counter–Petition for Declaration of Equitable Parent–Child Relationship because the court should have

---

**1.** The blood test determined that Husband was the father of the other child who was tested. Daughter's biological father is unknown.

exercised its equity powers to declare Husband Daughter's "equitable parent."

We review de novo the grant of a motion to dismiss, examining the pleadings to determine whether they invoke principles of substantive law. *Weems v. Montgomery*, 126 S.W.3d 479, 484 (Mo.App. 2004). When the trial court's judgment does not state the basis for its granting the dismissal, as in the instant case, we presume the dismissal was based upon one of the grounds presented by the moving party. *Wineteer v. Vietnam Helicopter Pilots Ass'n*, 121 S.W.3d 277, 282 (Mo.App.2003). We will affirm the trial court's ruling so long as it could be sustained on any of the grounds asserted by the movant. *Id.*

Husband's motion to dismiss is a motion to dismiss for failure to state a claim upon which relief can be granted. As such, our review tests the adequacy of Wife's petition, assuming all her averments are true and liberally granting her all reasonable inferences therefrom. *Hammond v. Mun. Corr. Inst.*, 117 S.W.3d 130, 133 (Mo.App.2003). We do not weigh the facts, but review the petition in an "almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.* (internal citations omitted).

Courts in other jurisdictions have declared a person who is not the biological parent of a child an "equitable parent" if he or she has assumed a parenting role in the child's life. Alan Stephens, Annotation, *Parental Rights of Man Who Is Not Biological or Adoptive Father of Child But Was Husband or Cohabitant of Mother When Child Was Conceived or Born*, 84 A.L.R.4th 655, 666–67 (1991). An "equitable parent" is substituted for the biological parent and can, therefore, be granted custody and ordered to maintain child support. *See id.*

Missouri has not adopted the "equitable parent" theory. *Cotton v. Wise*, 977 S.W.2d 263, 264 (Mo.1998). Our Supreme Court, in addressing this issue, found that "equitable parenting" is not a widely accepted theory and has no fixed meaning or application. *Id.* In *Cotton*, the trial court had applied the "equitable parent" theory in awarding custody of two children to their half-sister, where the children's only living parent showed a history of abuse. 977 S.W.2d at 263–64. The Supreme Court, however, found that the trial court erred in applying the "equitable parenting" theory because Missouri's statutory scheme was adequate under the circumstances to resolve the dispute without requiring the court to exercise its equity powers. *Id.* at 265.

Wife argues that *Cotton* is distinguishable from the instant case because neither party shows a history of abuse or has been adjudged an unfit parent. She reminds us that *Cotton* held that "[u]nless a statutory scheme is plainly inadequate under circumstances where a court has a duty to act, there is no need for the court to exercise its equity powers to fashion a 'better' remedy than exists in the statutes." 977 S.W.2d at 264. She asserts that the statutory scheme applicable in this case does not adequately protect Daughter's rights and best interests and, therefore, the court should exercise its equity powers in adopting the "equitable parent" theory.

One of the applicable statutes, the Uniform Parentage Act ("UPA"), was largely adopted and codified by Missouri in 1987 and provides the statutory procedure for determining paternity. *In re Marriage of Fry*, 108 S.W.3d 132, 135–36 (Mo.App.2003) (holding the provisions of the UPA apply in determining paternity in dissolution actions). The other appli-

cable statutes, Missouri's Probate Code for Guardianship, Chapter 475, provide the procedure for establishing a minor's legal guardian. Wife argues that both the UPA and the Probate Code for Guardianship do not provide an adequate statutory scheme by which Husband can be found to be Daughter's father.

Section 210.834.4, RSMo 2000,[2] of the UPA provides that a blood test is conclusive evidence of nonpaternity if results so indicate. *Dobyns v. Phillips*, 936 S.W.2d 588, 589 (Mo.App.1996). In the case at hand, a blood test established that Husband is *not* Daughter's biological father. Guardianship statutes also do not provide a category by which Husband could be assigned parentage or guardianship of Daughter. Section 475.030.4 allows for letters of guardianship to be granted where the minor has no parent living, the living parent or parents are adjudged unfit, or where the living parent or parents have had their parental rights terminated. None of these conditions exist in the instant case.

 We agree with Wife that Missouri's statutory scheme does not allow Husband to be adjudged Daughter's father. We disagree, however, with her assertion that *Cotton* requires equity to be applied to overcome this allegedly inadequate statutory scheme and appoint Husband as Daughter's "equitable parent." A court should exercise its equity powers only when the statutory scheme is plainly *inadequate*. *Cotton*, 977 S.W.2d at 264 (emphasis added). Since the Supreme Court's refusal in 1998 to recognize the "equitable parent" theory in *Cotton*, our legislature has not chosen to enact legislation codifying this theory. The trial court did not err in dismissing Wife's petition seeking to apply the "equitable parent"

theory because that theory is not recognized in Missouri. *See Cotton*, 977 S.W.2d 263 (Mo.1998). In *Cotton*, the Supreme Court stated that "[the] legislature has provided standards under which the courts of this state may abrogate or abridge the rights and prerogatives of natural parents," and these legislative standards "are entitled to be observed." *Id.* at 265. The Court pointed out that "[t]he problem with a court-fashioned 'equitable parent' theory is that the court has to improvise, as it goes along, substantive standards and procedural rules about ... matters that already have well-charted passageways under state statutes and related court decisions." 977 S.W.2d at 265. "Courts may not disregard a statutory provision, for where the Legislature has enacted a statute which governs and determines rights of the parties under stated circumstances, equity courts equally with courts of law are bound thereby." *McGhee v. Dixon*, 973 S.W.2d 847, 849 (Mo.1998) (quoting *Kuenzle v. Missouri State Highway Patrol*, 865 S.W.2d 667, 669 (Mo. banc 1993)). We cannot find Missouri's statutory scheme plainly inadequate to resolve this issue and decline to exercise our equity powers. The existing statutes are "quite sufficient" to serve Daughter's interests. *Cotton*, 977 S.W.2d at 263.

While several other jurisdictions recognize the theory of "equitable parentage," we do not find those extrajurisdictional cases persuasive in that they are factually distinguishable.

Wife cites a Michigan case, *Atkinson v. Atkinson*, 160 Mich.App. 601, 408 N.W.2d 516 (1987), holding that a husband who was not the biological father of a child born or conceived during the marriage could be considered the "equitable parent" under certain circumstances. 408 N.W.2d

**2.** All further statutory references are to RSMo 2000 unless otherwise indicated.

at 519. *Atkinson*, however, is distinguishable in several material aspects. The elements of "equitable parentage" applied in *Atkinson* included a requirement that the husband willingly takes on the responsibility for child support. *Id.* In this case, Husband is unwilling to pay child support. Most importantly, the husband in *Atkinson* was attempting to assert his parentage by equitable means while the mother attempted to bar it. *Id.* at 517. In the instant case, Wife is attempting to assert Husband's parentage by equitable means, while Husband attempts to bar it. We find *Atkinson* unpersuasive in considering whether "equitable parentage" is applicable here. We find the statutory scheme in Missouri for determining parentage, as provided by the legislature, is adequate to determine that Husband is not Daughter's father. Further, no Missouri case indicates that equity requires application of the "equitable parent" theory in this case. Wife failed to state a claim upon which relief may be granted in that Missouri has not recognized the "equitable parent" theory. Wife's first point is denied.

We next address Wife's third point, in which she asserts that Husband should be equitably estopped from denying that he is Daughter's father because he acted as her father for 14 years.

Limited authority addressing parentage by estoppel exists in Missouri courts. In *S.E.M. v. D.M.M.*, 664 S.W.2d 665 (Mo. App.1984), a wife conceived a child during her separation from her husband. 664 S.W.2d at 666. The couple reunited and the husband cared for the wife during her pregnancy. *Id.* at 666–67. After the child's birth, the husband acknowledged the child as his own to hospital and insurance officials and for tax purposes. *Id.* at 667. He told his wife he would care for the child, and he represented the child as his own to others. *Id.* During dissolution

proceedings, both parties stipulated that the husband was not the biological father, as proved by a blood test and his successful vasectomy prior to the marriage, but the trial court ordered him to pay child support. *Id.* Our court held that the trial court erred in ordering the husband to pay child support because the general rule is that "a husband is not bound to support illegitimate children born to his wife before or during the marriage." *Id.* We acknowledged, however, that there are two exceptions to this general rule wherein child support liability might be imposed on a person for a child not his own. *Id.* First, an obligation for continued support may arise from an express contractual assumption wherein a husband has agreed to a continuing obligation to support a child. *Id.* Second, an obligation might arise based on the theories of estoppel. *Id.* Wife does not assert a contractual assumption by Husband, but asserts that the estoppel exception creates liability for Husband to continue supporting Daughter in this case.

In *S.E.M.*, the court discussed the California appellate court's use of the estoppel exception in *Clevenger v. Clevenger*, 189 Cal.App.2d 658, 11 Cal.Rptr. 707 (1961). *S.E.M.*, 664 S.W.2d at 667–68. It was noted that the estoppel exception can impose child support liability in cases where assertions are made by the husband to the child such that the husband represents himself as the child's natural father with an intent that the representation be accepted and acted upon by the child, and the child relies on the representation to his detriment. *Id.* at 667 (citing *Clevenger*, 11 Cal.Rptr. at 714–15). In *S.E.M.*, we found that the parties' actions did not merit the application of the estoppel exception because the child was only eight months old when the parties separated and the elements of estoppel, particularly detrimental

reliance, were not established.[3]

Missouri courts have not thoroughly addressed the theory of establishing a child support obligation through equitable estoppel since *S.E.M.*, and the definitions of misrepresentation, reliance, and detriment in this context have not been fully explored. As such, an examination of other jurisdictions' decisions is appropriate in our review of this case.

Jurisdictions that apply equitable estoppel as a means of imposing a child support obligation or disallowing denial of parentage consider a variety of criteria.

Some jurisdictions do not permit equitable estoppel where the father is ignorant of the child's true paternity. *See Dews v. Dews,* 632 A.2d 1160 (D.C.1993) (husband did not knowingly misrepresent his parenthood to child); *Masters v. Worsley,* 777 P.2d 499 (Utah Ct.App.1989) (wife misrepresented parentage to husband, and husband therefore did not misrepresent parentage to children).

Other jurisdictions consider the reliance of, and detriment to, the child or mother. In *Pietros v. Pietros,* 638 A.2d 545 (R.I. 1994), for example, a husband sought a blood test to establish paternity during divorce proceedings to avoid child support obligations. 638 A.2d at 545–46. The Supreme Court of Rhode Island held that he was equitably estopped from denying paternity because the mother had told her future husband that she was pregnant by another man, and he had assured the mother that he would support the child.

*Id.* She relied on the assurances in deciding to marry him and not terminate the pregnancy, and he acted as the child's father for five years. *Id.* The Court stated that the application of equitable estoppel itself did "not affirmatively ... impose a duty of child support upon [the husband]." *Id.* at 548 (citing *Knill v. Knill,* 306 Md. 527, 510 A.2d 546, 560 (1986)). Rather, the duty of child support was imposed through the husband's "voluntary and continuous course of conduct as the child's only father." *Id.*[4] The case at hand is distinguishable in that Wife did not disclose the fact that she had sexual intercourse with another man about the time of Daughter's conception and because she misrepresented to Husband that he was Daughter's father. In *Pietros,* the husband, knowing he was not the child's father, assured the mother he would support the child and did so for five years. *Id.* at 545.

Some courts, however, do not find detriment to the child by a husband's accepting a parental and support role, yet later rejecting that role. *See In re Marriage of A.J.N. & J.M.N.,* 141 Wis.2d 99, 414 N.W.2d 68 (1987) (finding no detriment where the wife would have borne the child even without support of her husband or the child's biological father). Other jurisdictions find detriment only if financial harm arises from the husband preventing the mother and child from pursuing or accepting support from the true father. *See Knill v. Knill,* 306 Md. 527, 510 A.2d 546, 548 (1986); *see also W. v. W.,* 248 Conn. 487, 728 A.2d 1076 (1999) (husband

---

**3.** Although the *S.E.M.* court found that the parties' actions did not rise to the level of *promissory* estoppel, the rule and its exceptions have been applied when dealing with *equitable* estoppel. *See Stein v. Stein,* 831 S.W.2d 684, 688–689 (Mo.App.1992) (following *S.E.M.* estoppel exception in analyzing an equitable estoppel argument in an equitable adoption dispute).

**4.** *See Atkinson,* 408 N.W.2d at 518–19, discussing briefly the theory of equitable estoppel and holding that where a husband voluntarily acted as a child's father and desired parental rights, he acquired paternity rights through the "equitable parent" theory.

estopped from denying paternity where he destroyed unprocessed paternity papers, preventing mother from pursuing support from natural father or public assistance). Other jurisdictions, however, may find detriment in emotional harm, as well. *See Clevenger v. Clevenger,* 189 Cal.App.2d 658, 11 Cal.Rptr. 707 (1961); *A.R. v. C.R.,* 411 Mass. 570, 583 N.E.2d 840 (1992) (finding that two children under two and a half years old had not relied in any meaningful way on the husband's representation of paternity, but declining to decide whether emotional detriment alone would be sufficient to trigger estoppel).

■ Although estoppel has been applied in other jurisdictions, it has never been applied where the wife has falsely misrepresented to the husband his paternity of the child, and he has acted on that misrepresentation until discovering the truth. We find no Missouri cases applying equitable estoppel in a paternity dispute such as this, and the legislature has given no authority to the courts to exercise such a power.

Imposing a permanent obligation of support on Husband by equitable estoppel may discourage other non-biological fathers from entering into a parent-child relationship with a child not their own. *See In re Marriage of A.J.N. & J.M.N.,* 414 N.W.2d at 71. We agree with the Wisconsin appellate court's holding in *A.J.N.* that declined to apply equitable estoppel to impose a child support obligation on a husband "merely because [he] developed a close relationship with the child and nurtured them into a family unit while 'acting' as the natural parent." *Id.* People in such positions "may choose to avoid supporting the child in order to not find themselves permanently obligated." *Id.* We agree with the *A.J.N.* court that "[v]oluntary support of nonmarital children or stepchildren should not be discouraged." *Id.*

Courts should exercise equity powers only if the statutory scheme is plainly inadequate. *Cotton,* 977 S.W.2d at 264. As we discussed above, the statutory scheme in Missouri adequately establishes that Husband is not Daughter's father under our statutes. The trial court did not err in failing to exercise its equity powers to estop Husband from denying paternity and imposing a child support obligation. Wife's third point is denied.[5]

■ Finally, in Wife's second point, she argues that the lower court erred in denying her Motion to Dismiss Respondent's Second Amended Petition for determination of paternity. Husband had prayed for an order declaring he was not Daughter's father, and that a third party was the father. Wife argues that the trial court was without jurisdiction to consider the petition because, under section 210.826(2), Husband had no standing to bring the action. Section 210.826 states who may bring an action to determine paternity. In relevant part, section 210.826(2) states that an action to determine the existence of the father and child relationship with respect to a child who has no presumed father may be brought by "any person having physical or legal custody of a child for a period of more than 60 days." No person was the presumed father of Daughter, and Daughter was in Husband's custody for 14 years.

---

5. We summarily address Wife's assertion in all three points that the trial court erred in denying her counter-petition because the decision was not in the best interests of Daughter. We find no Missouri case where, in the child's best interests, equitable powers were exercised to *establish* paternity for the payment of child support. As discussed above, the trial court properly dismissed Mother's petition and did not err in finding Husband not to be Daughter's father.

Husband had standing to bring the action under section 210.826(2), and the trial court did not err in denying Wife's motion to dismiss Husband's petition. Wife's second point is denied.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, SR., P.J., and ROBERT G. DOWD, JR., J., concur.