**Natalie WALKER, Respondent,**

**v.**

**Michael Aaron WALKER, Appellant.**

**No. WD 69198.**

Missouri Court of Appeals,
Western District.

Jan. 13, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 2009.

Application for Transfer Denied
May 5, 2009.

Sandra G. Hessenflow, Kansas City, MO, for Appellant.

Catherine Earnshaw–Hobbs, Lee's Summit, MO, for Respondent.

Before JAMES M. SMART, JR., P.J., LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Michael Walker (Husband) appeals the circuit court's dismissal of his motion in which he sought the circuit court's declaration of non-paternity regarding N.M.W. and M.A.W. and sought to recover child support, health insurance, and other expenses from his ex-wife, Natalie Walker (Wife). Husband asserts that the circuit court erred in dismissing these counts because: (1) Rule 74.06(d) allows for Husband's cause of action for extrinsic paternity fraud, (2) collateral estoppel and res judicata are inapplicable to his cause of action for extrinsic fraud, (3) Husband should have been granted relief pursuant to section 210.834, RSMo 2000, (4) it is the trend to allow Husband to correct fraudulent parentage judgments, and (5) any arguments contrary to granting Husband relief are substantially outweighed by the harm and damage done to Husband. We affirm.

Husband and Wife were married on March 30, 2002. According to the judgment of dissolution, there were two children born of the marriage. N.M.W. was born prior to the marriage on October 1, 1999, and M.A.W. was born on January 24, 2003. The judgment of dissolution of marriage was entered on January 28, 2005.

On February 6, 2007, Husband filed his motion, which he entitled:

Respondent's (1) motion for declaration of non-paternity and for blood testing regarding N.M.W. and/or (2) in the alternative respondent's motion for declaration of non-paternity regarding M.A.W. and/or (3) in the alternative respondent's suit in equity to recover child support, health insurance and other expenses expended by the respondent for the support of petitioner's children based upon petitioner's fraud in obtaining the judgment of 01/28/2005 and/or (4) in the alternative respondent's family access motion to enforce visitation and/or (5) in the alternative respondent's application for contempt of court for petitioner's failure to comply with custody and visitation provisions and/or (6) in the alternative respondent's motion to modify judgment and decree of dissolution of marriage regarding custody, visitation and child support.

Husband's motion consisted of six counts; however, only the first three counts are at issue in this appeal.[1]

In count one of the motion, Husband moved for declaration of non-paternity and for blood testing regarding N.M.W. In count two, Husband moved for declaration of non-paternity for M.A.W. And, in count three, he requested recovery of child support, health insurance, and other expenses that he paid to support the two children. In dismissing counts one through three of the motion, the circuit court found that Husband had not requested paternity testing regarding either child during the course of the dissolution action. The circuit court found that, pursuant to sections 210.822.1(1) and 210.822.1(2), RSMo 2000, Husband is the presumed father of both children. The circuit court held that, pursuant to *Miller v. Hubbert,* 804 S.W.2d 819 (Mo.App.1991), Husband's paternity was previously adjudicated in the dissolution proceeding and that he is bound by that prior paternity determination and precluded from raising it further due to the doctrine of res judicata. Husband appeals.

■ "Our standard of review of the circuit court's granting of a motion to dismiss is *de novo.*" *State Dep't of Soc. Servs. v. Stipancich,* 238 S.W.3d 224, 225 (Mo.App. 2007). We examine the pleadings to determine whether they invoke principles of substantive law. *Weems v. Montgomery,* 126 S.W.3d 479, 484 (Mo.App.2004).

■ In his first point, Husband contends that the circuit court erred in dismissing count one through three of his motion because Rule 74.06(d) authorized him to present his suit in equity based upon extrinsic paternity fraud. Rule 74.06(d) provides:

This Rule 74.06 does not limit the power of the court to entertain an independent action to relieve a party from a judgment or order or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these Rules or by an independent action.

■ The circuit court held that this action was precluded by the doctrines of collateral estoppel and res judicata. However, res judicata and collateral estoppel are inapplicable to bar a claim to set aside a judgment obtained by extrinsic fraud. *State ex rel. Div. of Child Support Enforcement v. Hill,* 53 S.W.3d 137, 145 n. 4 (Mo.App.2001). A prior judgment can be set aside if it can be shown that it was obtained by extrinsic fraud.[2] *Vinson v. Vinson,* 725 S.W.2d 121, 124 (Mo.App. 1987). Extrinsic fraud refers to the fraudulent procurement of a judgment, not the propriety of the judgment. *Id.* It must relate to the manner in which the judgment was obtained. *Id.* It is defined as " 'fraud that induced a party to default or to consent to a judgment against him.' "

---

**1.** The circuit court's dismissal of only three of the six counts combined with its supplemental order clearly expressed that there was no just reason to delay appellate review of the first three counts in compliance with Rule 74.01(b), making it a final, appealable judgment.

**2.** "Examples of conduct constituting extrinsic fraud include the failure of a guardian ad litem to properly represent his ward in a

divorce case, a husband's representations to his wife that his lawyer would look out for her interests and she had no need for her own lawyer, some action by one party which prevents the appearance in court of the other party, a false promise of a compromise which keeps the opposing party away from court, and actions whereby an attorney 'sells out' his client's interest to the other side or connives to bring about his client's defeat." *Vinson,* 725 S.W.2d at 124 (citations omitted).

*State ex rel. Lowry v. Carter*, 178 S.W.3d 634, 637 (Mo.App.2005) (citation omitted).

■■ The character of a cause of action must be determined from the factual allegations of the petition. *Memco, Inc. v. Chronister*, 27 S.W.3d 871, 875 (Mo.App. 2000). " '[O]ne cannot recover for a cause of action not pleaded.' " *Gunter v. City of St. James*, 189 S.W.3d 667, 678 (Mo.App. 2006) (citation omitted). For Husband's motion to invoke the equitable powers of the court, he must have pled extrinsic fraud sufficiently in his motion. Fraud must be pled with particularity. Rule 55.15. In count one Husband moved for declaration of non-paternity and blood testing with regard to N.M.H. Husband alleged the following:

That although [N.M.W.] was conceived during a time when the Petitioner and Respondent were married and Petitioner stated under oath in her Petition for Dissolution of Marriage that [M.A.W.] was a child of the marriage, blood testing has subsequently shown that the Respondent is not the biological father of [M.A.W.] as set forth in more detail in Count III of Respondent's Motion.

That this Court, Respondent, Respondent's counsel, and presumably Petitioner's counsel, relied upon the fraudulent statements of Petitioner concerning the parentage of [M.A.W.] which now raises a question as to the accuracy of Petitioner's similar assertions concerning the parentage of [N.M.W.], and blood testing is necessary to determine [N.M.W.]'s biological father.

In count two, Husband moved for declaration of non-paternity for M.A.W. In that count Husband alleged:

That this Court, the Respondent, Respondent's counsel, and presumably Petitioner's counsel relied upon the fraudulent statements of the Petitioner made under oath in her Petition of Dissolution of Marriage wherein she claimed that [M.A.W.] was a child born of the marital union between herself and Michael Walker, as is set forth in more detail in Count III of Respondent's motion.

And, in count three, Husband moved to recover child support and expenses based on Wife's fraud. In count three, Husband alleges:

That Petitioner committed both intrinsic and extrinsic fraud on the Court, the Respondent, the Respondent's counsel, and presumably on her own counsel in this matter in numerous ways.

First of all, she signed under oath a Petition for Dissolution of Marriage filed with this Court on February 13, 2004 wherein in paragraph 7 she indicated that the two minor children [N.M.W.] and [M.A.W.] were children born of the marriage between the Petitioner and the Respondent when she knew in fact that one, and possibly both of those children were not children of the marriage and were not the biological children of the Respondent.

That the Court, Respondent, Petitioner's counsel, and Respondent's counsel all relied on Petitioner's sworn Petition for Dissolution of Marriage in resolving the underlying dissolution case, and in allowing to be entered a subsequent Judgment concerning the custody, visitation and support of the two minor children. . . .

That based upon Petitioner's fraudulent representations to the Court in her Petition and in her live testimony under oath during the divorce proceedings, this Court entered a child support order[.]

■ Husband fails to invoke the equitable powers of the court. Although he made the general assertion of extrinsic fraud in count three, Husband failed to allege *any* facts supporting that cause of action. He specifically alleged acts which

constitute intrinsic fraud only. Husband does not allege anything that constitutes extrinsic fraud because his allegations are based solely on Wife's false averments in a divorce petition and her sworn testimony in court, which do not constitute extrinsic fraud. *Miller*, 804 S.W.2d at 821; *K.E.A.*, 765 S.W.2d at 391. "It is the facts stated in the petition, along with the relief sought, which under our system of code pleading are to be looked at to determine the cause of action, rather than the form of the petition." *Memco, Inc.*, 27 S.W.3d at 875. Husband's allegations are insufficient to invoke the equitable powers of the court, and, therefore, the circuit court did not err in dismissing counts one through three of Husband's motion.

In support of his claim of extrinsic fraud, Husband relies on *Jefferson v. Jefferson*, 137 S.W.3d 510 (Mo.App.2004), for the proposition that a man can raise the issue of non-paternity when he has blood test results showing that he is not the father. However, the facts in *Jefferson* are clearly distinguishable from facts in the present case. In *Jefferson*, the wife sought to establish the father's paternity by estoppel based on husband's pre-dissolution conduct toward the child, based on wife's false assurances that he was the child's father. The circuit court held that conduct induced by such a misrepresentation could not support an estoppel; importantly, *Jefferson* did not involve an earlier judgment from which the father sought relief. The husband sought paternity testing *during* the pendency of the dissolution proceeding and prior to adjudication. *Id.* at 512. In the present case, Husband did not submit to paternity testing until after the dissolution case and paternity had been adjudicated.

Husband also points to *State ex rel. Division of Child Enforcement v. Hill*, 53 S.W.3d 137 (Mo.App.2001). *Hill* sets forth that there may be a cause of action

in an independent suit in equity to set aside a paternity judgment on the basis of extrinsic fraud, if the substance of the motion is " 'sufficient to invoke the equitable powers of the court.' " *Id.* at 144 (citation omitted). In *Hill*, husband alleged that wife had misrepresented the results of the paternity test, taken prior to the entry of judgment, to him and the court. *Id.* Husband alleged that he consented to the paternity judgment because of wife's misrepresentation. *Id.* This court held that husband's allegations sufficiently pled an equitable claim for relief on the basis of extrinsic fraud. *Id.* at 145.

However, the present case is distinguishable from *Hill.* In *Hill*, the husband alleged that prior to trial he requested wife and child to submit to paternity testing. Wife represented to him that she did have the paternity testing done as he requested and that the results conclusively showed that he was the father of the child. Husband, further, alleged that no testing was ever done and that wife's representations were false. In reliance on the false representation, husband consented to paternity. There is no such allegation in the present case.

Husband also relies on *State ex rel. Lowry v. Carter*, 178 S.W.3d 634 (Mo.App. 2005), in support of his contention that he sufficiently pled extrinsic fraud. In *Lowry*, this Court found that husband's motion was sufficient to invoke the equitable powers of the court. *Id.* at 637. This court noted that Rule 74.06(d) allows the circuit court to entertain an action and set aside a final judgment more than one year after it was entered if a party committed fraud upon the court. *Id.* The circuit court is "free to treat the motion as an independent action in equity if its substance is 'sufficient to invoke the equitable powers of the court.' " *Id.* (citation omitted). The court noted that such actions are to be

read liberally. *Id.* In *Lowry*, the husband's motion stated that the paternity judgment was procured through means of fraud and material misrepresentation of fact in that wife intentionally mislead the court and husband into believing that husband was the biological father. *Id.* Husband also alleged that, as a result of the false allegations, he had unjustly paid money to wife. *Id.* These allegations were sufficient to invoke the equitable powers of the court. *Id.* Notably, *Lowry* itself held that an alleged misrepresentation in an affidavit filed with the circuit court could not justify relief since "allegations that a party knowingly fabricated evidence to procure a judgment cannot rise to the level of extrinsic fraud." *Id.* at 638.

In an admirable effort to comply with the requirement that he must plead fraud with particularity, Husband's allegations are more specific than those addressed in *Lowry*. The most charitable reading of Husband's motion shows he has pled only intrinsic fraud. In the present case, Husband goes beyond pleading general allegations of fraud and alleges fraud based solely on Wife's false statements in her sworn petition and in her sworn testimony in court.

The present case is more analogous to *Miller v. Hubbert*, 804 S.W.2d 819 (Mo. App.1991). In *Miller*, husband alleged that the divorce decree was procured by fraud on the part of wife, in that, at the time the judgment was entered, wife knew that he was not the father but withheld information pertaining to the identity of the biological father, thereby permitting the entry of the divorce decree based on fraud. *Id.* at 820. The circuit court dismissed husband's action based on res judicata and laches. *Id.* In husband's appeal, he claimed that res judicata had no applicability where a prior judgment was procured by extrinsic fraud. *Id.* The *Miller* court held that the circuit court properly

dismissed husband's action because false averments in a divorce petition, false statements in an affidavit, and false testimony do not constitute extrinsic fraud. *Id.* at 821. The *Miller* court clearly stated that wife's statements concerning the paternity of the two children did not constitute extrinsic fraud. *Id.*

Also analogous to the present case is the decision in *K.E.A. v. T.A.A.*, 765 S.W.2d 389 (Mo.App.1989). In that case, husband alleged that, at the time of the dissolution, he believed he was the father of child. *Id.* at 390. He alleged that wife knew he was not and that she concealed that fact from him and the court. *Id.* In his motion to set aside the judgment, he alleged that an extrinsic fraud was perpetrated on the court to allow the court to find that the child was his son, when in fact he was not the biological father. *Id.* The circuit court dismissed husband's claim. *Id.* Husband appealed claiming that the circuit court erred in dismissing his cause because he had pleaded the "issues of extrinsic fraud ... and mistaken material fact, which if known would have prevented the entry of the decree." *Id.* at 391. Like the *Miller* court, this court held that false averments, false statements, and false testimony do not constitute extrinsic fraud. *Id.* The court held that those go to the merits of the dissolution action, and the dismissal was upheld. *Id.*

Husband contends that our statutes fail to provide adequate relief for alleged victims of paternity fraud. He notes criminal statutes have been enacted to govern the use of DNA tests in exonerating criminal defendants convicted of crimes, and such should be the case regarding parentage. He is certainly correct that scientific advancements in the determination of parentage raise new issues not previously addressed. This Court, however, is not the legislature. Whether our statutes are in-

adequate in light of scientific advancements to provide appropriate relief to these types of cases is a question better suited for the legislature.

In the case at bar, because all the factual allegations of Husband were intrinsic to the judicial process and no facts alleging extrinsic fraud were pled, the circuit court properly dismissed counts one, two, and three of Husband's motion challenging his parentage of the children.[3]

We affirm the circuit court's judgment.

SMART and HARDWICK, JJ., concur.

---

**3.** We need not address Husband's remaining contentions on appeal because the circuit court properly dismissed Husband's counts one, two, and three of his motion to modify because Husband failed to invoke the equitable powers of the court.